No. 93.—MATTHEW AVERETT, plaintiff in error, vs. KENDRICK M. K. BRADY, defendant in error.

[1.] In an action for mesne profits for a ferry landing, it is proper, in estimating the damages, to consider the proceeds of the ferry, deducting the expenses of fitting it up and carrying it on, and making due allowance for all risks and expense, especially when the defendant is a trespasser.

[2.] While it is the duty of the Court to charge the Jury on points made in argument to the Jury, growing out of the case and authorized by the testimony, yet, it is no error if he fails to do so, unless at the time of the charge the Counsel recalls the points to his mind. If he does not, he will be considered as having waived them or acquiesced in the charge, as given.

[3.] In an action for mesne profits against a trespasser, the rule is quite liberal enough, that if the improvements made on the land increase the profits, it is proper for the Jury to take into consideration the improvements, and to diminish the profits by them; but not below the value without the improvements.

[4.] In an action for mesne profits against a trespasser for seizing the plaintiff's ferry landing, it is sufficient to show title to the landing; the plaintiff need not show authority for the ferry. Without such authority, the plaintiff, if he has had the possession, might have charged passengers.

Complaint in Ejectment, in Stewart Superior Court. Decided by Judge KIDDOO, April Term, 1856.

An action was instituted by Kendrick M. K. Brady against Matthew Averett, to recover lot of land No. 82, in the 22d district of Stewart County, and lying on the Chattahoochee river. The case came on for trial at April Term, 1856, of Stewart Superior Court, when the plaintiff introduced the following evidence:

1st. A copy of the plat and grant from the State of Georgia to Nathan Brady to the lot in dispute, having first shown the loss of the original.

2d. GEO. J. LUNSFORD testified, that plaintiff was the only child of Nathan Brady, deceased, and that he was born in 1829 or 1830; thinks in 1829, but does not recollect the month.

3d. WILLIAM R. COLLIER testified, that defendant was in possession of the premises in dispute in 1853, in the following manner: He had a negro cabin on said lot, and was in possession using the banks of the river in the management and employment of a ferry boat for the transportation of passengers across said river; that his ferryman lived in said cabin. He further testified, that the annual value of said lot to defendant whilst he occupied it, was worth about $1.000.

4th. WILLIAM CARTER testified, that defendant went into possession in the spring of 1843, and was in possession when the suit was brought; that the income of said ferry was about $1.000 per annum, and the expenses in keeping it up were from $200 to $300 per annum; that in 1839 defendant was in possession of a house on said lot of the annual value of from $100 to $150; also, a cabin worth $15 or $20; that he also had in possession the ferry landing, which was worth but little, except for a ferry landing; that the ferry landing was about thirty feet from the old bridge, and that a road led from the end of one of the public streets of the town of Florence to the old bridge, which had been used as a public highway from 1843 until this suit was brought; that defendant had opened and used a way to the landing, and had used and exercised acts of ownership over no portion of said lot,

except said house, the negro cabin and the ferry landing; that the remainder of said lot was controlled by other persons.   Witness further testified, that Nathan Brady died in 1836.

Plaintiff closed, and defendant introduced no evidence.

The Court charged the Jury that if, in their opinion, the plaintiff had proved title in himself, they ought to find in his favor the premises in dispute, and a reasonable rent for the house and ferry landing according to the testimony; that in estimating the rent of the landing, they might take into the account the proceeds of the ferry, and deduct the expenses of fitting up and carrying on the same, making due allowance for all risks and expenses; and that as a landing on the other side of the river was necessary to carry on the ferry, it might be equitable (as plaintiff's Counsel conceded) to allow only half the nett proceeds as rent for the landing on this side of the river ; and further, that they should consider this as all other cases of rent.

By request of defendant's Counsel, the Court further charged, that the bed of the river belonged to the State of Georgia.

Defendant's Counsel then requested the Court to charge, that the right of ferry over said river was a franchise belonging to the State of Georgia; that none could rightfully exercise the same without a grant from the Legislature; and that no rent was due the plaintiff for the use of that which did not belong to him as a riparian proprietor.   The Court did not give this request in charge, and defendant excepted and assigns such refusal to charge as error; and also, that portion of the charge given instructing the Jury, " that in estimating the rent of the landing, they might take into the account the proceeds of the ferry after deducting the expenses of fitting up and carrying on the same, and making due allowance for all risks and expenses."

The Jury found for plaintiff with $4.924 *mesne* profits.

B. K. HARRISON; HINES HOLT, for plaintiff in error.

TUCKER & BEALL, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

There are two assignments of error in this case :

1st. That the Court erred in charging the Jury that in es-timating the rent of the landing, they might take into the ac-count the proceeds of the ferry, after deducting the expenses of fitting up and carrying on the same, and making due al-lowance for all risks and expense.

2nd. That the Court erred in omitting to charge the Jury as requested to do by defendant's Counsel, in the midst of his argument before the Jury, that the right of ferry over said river was a franchise belonging to the State of Georgia, and that no one could rightfully exercise the same without a le-gislative grant; and that therefore, no rents were due the plaintiff for the use of that which did not belong to him as a riparian proprietor.

The record shows that there was no plea of any sort in the Court below, and that no evidence was submitted for the de-fendant except that which appeared in the plaintiff's case.

The plaintiff showed title in his ancestor; proved his death and claimed as heir at law. The suit was instituted on the 17th of April, 1853. The process bears that date. Accor-ding to witness' belief, the plaintiff was born in 1829, but he could not state the month. The defendant, for aught that appears in the record, entered as a trespasser. He claimed no title. It does not appear that the plaintiff in error erect-ed the ferry, or that there was no ferry there at the time the de-fendant took possession of the property. He opened and used a way to the landing, but it does not appear that there was no access to it but that made by defendant. The road opened by defendant was probably from the street which led to the bridge, which was but a short distance.

[1.] Was the charge of the Court right as to the mode of estimating the damages in this case?

In an action for *mesne* profits, in addition to other matters in relation to which this record presents no controversy between the parties, the plaintiff must prove "the value of the *mesne* profits, to be estimated by the amount of the crops taken, or by the fair annual value of the premises." (4 *Phil. on Ev.* 315.) The plaintiff proved by one witness the annual value of the land during the defendant's possession of it. By another witness he proved the yearly income of the ferry and the annual value of a house and negro cabin on the premises while the defendant occupied them. This witness proved the value of the hire of a ferryman and other expenses of keeping the ferry. The record shows no evidence on the subject of making the ferry and the risk of keeping it. The first witness speaks of the defendant's possession of the premises in May, 1853, but he mentions no time anterior to that, and says that he was in possession in the following manner, to wit: he had a negro cabin on said lot of land and was *using* and *enjoying* the banks of the river in the management and employment of a ferry boat across the river, &c. He speaks of the ferry as a thing in operation and then used and enjoyed by the defendant. The first mention made by the next only witness who testified of the ferry landing is, that the defendant had in possession the ferry landing, which was worth but little except for a ferry landing. He spoke of it as existing as a ferry landing at the date of the defendant's possession. The instructions given to the Jury under the facts disclosed in the record, are quite liberal enough for a trespasser who is not favored by the law. But suppose the evidence in this case had shown that the defendant erected the ferry; dug down the banks; constructed the flat and did every thing necessary for operation, he would have been accountable before another tribunal pretty much as the Court charged the Jury in this case; he would have been accountable for what was actually made, deducting expenses, and additionally, for interest. The plaintiff was an infant at the

time of the defendant's entry, and the latter was liable to ac-count to him as guardian. If he had been his regularly ap-pointed guardian, and had used his ward's property as his own, he would have been accountable for all he made by it: and the interest. Having gone into possession and used it,. not having been guardian, he was accountable, notwithstand-ing, and could not defend by showing that he was not guar-dian. In such case, he would have been accountable as bail-iff or guardian. (2 *Peer. Wms.* 645. *Drury vs. Conner,* 2 *Harris & Gill* 227.) One of the witnesses testified that the annual value of the lot of land to the defendant, during his occupation of it, was one thousand dollars; the other testified that the annual income *of the ferry* was about one thousand dollars. We think there was no error in the Court's instruct-ing the Jury that in estimating the rent of the land, they were at liberty to take into the account the proceeds of the ferry, after making the deductions mentioned by him.

. The verdict of the Jury shows that they did not find the full amount of the value of the rents of the houses and one half the ferry made, after deducting expenses, &c. &c. They considered, no doubt, the nett proceeds of the ferry as a cri-terion of value in estimating the rent. The verdict of the Jury is much less than a Court of Chancery ought to have decreed, under the same proofs, if the plaintiff had elected to proceed on the equity side of the Court, which he, having been an infant at the time of the defendant's occupancy of the premises and the greater part of the time of his posses-sion of them, had a right to do.

[2.] The next error assigned is, the omission and not the refusal of the Court to charge. It is right and proper for the Court, before whom a trial is had, to deliver to the Jury the law on the points made by the Counsel in their argument to the Jury, provided they are justified by the case and the evidence; and if he omits to do so, it must be supposed that they have passed out of his mind. If he should not charge the Jury in regard to them, and the Counsel does not call his attention to them, it must be considered that he has waived

his requests or has acquiesced in the charge as given. It cannot be assigned as error. But if, in this case, we regard the omission of the Court to charge, as requested, as a refusal so to charge, we think there was no error in the refusal. The ownership of the water is not necessary to the ownership of the ferry. "A ferry is in respect of the landing place and not of the water; the water may be to one and the ferry to another." (*Tomlin's Law Dict.* "*Ferry.*") "The ferry right is an incorporeal hereditament. It grows out of the soil, and may be granted, the same as a rent or an advowson." (2 *Am. Law Mag.* 458.)

The plaintiff proved title to the landing; that there was a ferry there; that the defendant entered and occupied it for several years and received the profits. *Non constat* who established the ferry. Suppose the defendant established it, he must be presumed to have established it under legal authority; that is, that he had a legislative grant to establish a ferry at that place. The grant of the privilege to establish a ferry is no grant of the land, unless the title to the land was in the grantor. If such grant is presumed, it must be also presumed to have been made on the ground of public convenience and for public use; and if the title to the landing was neither in the grantor (the State being the grantor) nor grantee, and compensation is not made to the owner of the landing, nor provided for, the grant, as to him, is a nullity and conveys no title against him; and the grantee becomes a trespasser by entering on his land, and if he hold it, he holds it tortiously.

If the defendant was a trespasser, so far as the plaintiff was concerned, and made improvements, under a legislative grant of a ferry, and the improvements added to the value of the land, the plaintiff was entitled to the benefit of them in all respects. This Court laid down a rule on the subject of damages in actions for *mesne* profits, quite liberal enough to trespassers, in the case of *Beverly & McBryde vs. Burke,* (9 *Ga. Rep.* 444,) where it held, that " if the profits of the premises

have been increased by repairs, it is proper for the Jury to take into consideration the repairs and diminish the profits by them, but not below the amount which the premises would have been worth without the repairs." In its charge, the Court allowed the defendant the full benefit of this rule.

Inasmuch as the defendant, as appears from the record, was a trespasser, having shown no title to the landing, it was sufficient for the plaintiff to porve title to the premises. It was not incumbent on him to show authority for the ferry. Without legislative authority, he might have charged passengers, being the owner of the landing. The defendant did charge, and has shown no authority for it. In England, I will take occasion to say, formerly, the proceeds of ferries, not established by grant or prescription, beyond what was necessary to defray expenses, might, by virtue of the royal prerogative, be claimed by the crown. But in this country, since the year 1776, there was never any such popular prerogative. as could claim for the public treasury the proceeds of unlicensed and ungranted ferries.

During the commonwealth in England, a bill filed by the tenant of an ancient ferry to suppress a new one, and to obtain an injunction against renewing it, was dismissed, " and the determination proceeded in a great measure upon the claim being considered as a monopoly, the plaintiff being a lessee of the crown." (2 *Eden. on In.* 271.) A ferry may be granted to a corporation as well as to a natural person; and in England, it has been held that an information in the nature of a *quo warranto* lies against them, if they set up an exclusive ferry without title, but it does not lie for merely taking money of passengers. (*Grant on Corp.* 195 (186.) This last decision would seem to recognize the right of the owner of land through which a stream passes to establish a ferry and charge tolls without the grant of such authority from the sovereign power. The Act of our own General Assembly of 1850 gave this right. (*Acts of* 1849 *and* 1850, *p.* 174.) If the right, however, pre-existed in the owners of the land, this Act only affirmed it and went one step further,

which the Legislature unquestionably had the power to do, and protected the community from extortion by the exaction of excessive tolls.

What is said here is not to be considered as questioning the legislative power to secure to the public the facilities of passing water courses, by conferring extraordinary privileges on persons who will erect ferries and construct bridges, and by going so far even as to authorize the owner to use the land of another upon making just compensation. This last is the exercise of a strong sovereign power, and ought never to be resorted to except in cases of an almost public necessity.

We regret that we cannot go at large into the consideration of many of the points urged by the learned Counsel who represented the case of the plaintiff in error. They are not authorized by the record, which it seems he had no agency in preparing.

This is not said in disparagement of the able Counsel who appeared in the Circuit Court for plaintiff in error; for we do not question that he considered the bill of exceptions as containing all the merits of his cause.

Judgment affirmed.