Thompson *vs.* Feagin.

## THOMPSON *vs.* FEAGIN.

1. A motion for a new trial on newly discovered testimony, must be supported by affidavits of some sort that the alleged newly discovered evidence is true.

2. A sale of all his landed estate made by husband to wife will convey title, if *bona fide* and for value, against creditors and all the world; but if not *bona fide*, but made with intent to hinder or delay or defraud creditors, said intent being known to the wife, such a sale, though evidenced by a deed executed afterwards with all the formalities of a legal conveyance of land, is void as against such creditors, especially if payment of full value is questionable under the evidence.

3. Transactions between husband and wife, where creditors are likely to suffer, should be scanned closely to test the good faith of the parties.

4. Where exception is taken to the charge of the court by excepting to long paragraphs thereof, involving several distinct issues of law, the particular error must be pointed out specifically, or such exception will not be considered, unless the entire paragraph be erroneous.

5. The same principle will be applied to an exception to the whole charge, unless. as a whole, it be erroneous.

6. The verdict is supported by the evidence and sustained by law, and the presiding judge did not abuse his discretion in overruling the motion for a new trial on that ground.

New trial. Husband and wife. Fraud. Debtor and creditor. Practice in the Supreme Court. Before Judge CRAWFORD. Harris Superior Court. April Term, 1877.

Reported in the opinion.

A. A. Dozier; James M. Mobley, for plaintiff in error.

Peabody & Brannon, for defendant.

Jackson, Judge.

Mrs. Feagin held a judgment against the husband of Mrs. Thompson, which was levied on certain lands in his possession, to which the wife claimed title. On the trial, the jury found the property subject, with ten per cent. damages, because the claim was, in their opinion, interposed for delay only.

Mrs. Thompson moved for a new trial on the grounds of newly discovered evidence, three errors in the charge of the court, and because the verdict was contrary to law and against the decided weight of the evidence. It was refused, and she excepted.

1. There is nothing in the ground that new evidence has been discovered, it being verified by no affidavit of any witness, and neither the party nor her counsel having filed any affidavit of its truth, or of their ignorance of the alleged new fact at the time of the trial.

2. The first assignment of error is to the charge contained in the third paragraph thereof, which is as follows:

" Mrs. Feagin denies, however, that there was any valuable consideration at all paid, and insists, also, that the sale, if made, was not *bona fide*, but made with the intent to defraud the creditors of Thompson, which intent was known to Mrs. Thompson, and, therefore, she being a creditor, it was void as to her. She further says that it was done to delay her and other creditors in the collection of their debts, and that this intention was known to Mrs. Thompson. If the testimony shows this to be the truth, then the title, whilst it might be good as between Thompson and wife, it would not be good as against creditors, and the land would be subject."

We see no error in this charge, under the facts of this

case, and read in the light of the context of the charge complained of. The court had just instructed the jury that if Mrs. Thompson bought the land from her husband, *bona fide* and for a valuable consideration, whether such consideration consisted of antecedent indebtedness from him to her, or of cash paid, then the land was not subject; and then went on to say that Mrs. Feagin denied this, both as to the value of the consideration and the good faith of the transaction; that full value was not paid, and good faith was not shown, but the truth was that the thing was done to defraud and delay the creditors of the husband; and the judge told the jury if they believed this to be the truth, and Mrs. Thompson knew it, then the land was subject, having just before told them that if she bought for value, and knew nothing of intent to defraud or delay, then it was not subject. Mrs. Thompson held under her husband, her deed was from him, and the issue was this: was that deed for value, and made in good faith, or was it got up with intent to defraud or delay creditors? The charge seems to us fully in accordance with sections 1952 and 1953 of the Code, construed together.

3. The next paragraph complained of is the 6th, which is as follows: "Transactions between husband and wife, whereby creditors are likely to suffer, are always to be scanned closely to test the *bona fides* of the parties."

The principle thus announced has been ruled by this court in language almost identical with that employed in the paragraph excepted to.

4. The next paragraph excepted to is the 9th, which is as follows:

"You may look to the fact that the law requires deeds to be recorded, and the time when, and if the testimony shows that the deed from Thompson to his wife was made September 2, 1874, or any other time, then, when was it recorded. You may look at the date of the judgment, the time of the sale, if made, as well as to the time when Mrs. Thompson gave notice of her title by having it put on record, and if

not within twelve months, has she satisfactorily explained notice. When you shall have reviewed the evidence, and applied the law as given you in charge, you will say by your verdict whether the land is subject to the *fi. fa.*; and if you so find, then so say; but if you find it not subject, then so say."

This whole paragraph is excepted to as one error. It is not specified wherein this error is. What part is wrong? Some of it certainly is, undisputably, law; and, as the whole cannot be pronounced erroneous, under the rulings of this court—reaffirmed at this term in the case of *Saulsbury, Respess & Co. vs. Wimberly*, not yet reported—this court will not hunt up errors in a charge which are not specially pointed out by the party complaining of error. For myself, I see no error in any of it. There is some confusion about explaining notice, but, evidently, the intention of the judge was to say, and, fairly construed, he did say, that failure to record a deed for more than twelve months was a suspicious circumstance which might be explained—that, on its face, it looked bad, as it withheld notice by record of this transaction between husband and wife; and yet the jury should look and see whether this failure to give record-notice of the transaction was satisfactorily explained. The whole court, however, put the overruling this exception upon the ground that the error is not specified, there being some difference of opinion in respect to the propriety of the use of the language that the law *requires* deeds to be recorded, my brethren thinking it would have been better to say " authorizes " instead of " requires " ; while I think that the law does *require* it, especially in transactions between man and wife, where there is no change of possession, and no notice, therefore, to the public of any change of title until the deed is recorded.

5. The next exception is to the charge, as a whole, without specifying particulars or even long paragraphs; and, of course, we cannot consider that.

It will be proper to say, that the grounds for new trial in the motion therefor, are not verified by the court, and,

therefore, we have taken, in lieu of what is set out in those grounds as the sum of what the judge charged, the paragraphs of the charge excepted to, and given by the judge himself in the bill of exceptions.

6. It remains to consider whether the verdict is against the law of the case, and the decided weight of the evidence.

The sum of the testimony is, that plaintiff's note was made in July, 1874; that the deed from Thompson to his wife was made in September, 1874, and not recorded until August, 1876; that suit was brought on the note on the 20th of September, 1875, and judgment obtained thereon on the 10th of April, 1876; that the trade between husband and wife was made in the early part of 1874, though the deed was not made until September of that year; that the deed was made and executed in Columbus, in an attorney's office, in the absence of the wife, and no money paid at the time, and, of course, no delivery to her, as she was not there, nor to any one for her; that she inherited an estate from her father in money, and received, in installments, from time to time, divers sums, amounting, up to the time plaintiff sued Thompson, to some seventeen hundred dollars, after suit, and before judgment, something over $800.00, and after plaintiff's judgment nearly $1,400.00; that not a dollar of this money had been received from her father's estate at the time that the trade between her and her husband was made, and the deed executed by him to her, the first payment from the estate to her being made on 28th of December, 1874; that her father, before his death, had bought one of the lots—No. 81—for her with twelve hundred dollars advanced for that purpose; but upon this lot, on this proof, plaintiff dismissed the levy, though the deed was made to the husband; that the consideration of the deed from Thompson to wife was, on its face, six thousand dollars; that this was paid by Mrs. Thompson, in three notes of two thousand dollars each, the first of which was canceled at once, on account of the payment for lot 81, and its rent, and

the part over was credited on another note (but no particular sum was named as so credited by Mrs. Thompson, who testified to the above facts about lot 81), and that the balance due on the other notes was paid as she got it from her father's estate; she also testified that when the deed was made, she knew nothing of the debt of her husband to Mrs. Feagin; she also said that the notes were all paid off with the money she got from the estate by the 1st of January, 1876, except about $400.00, rent for 1875, and that she had no other money except this and rent of lot 81; she made no explanation in regard to not recording the deed, but Thompson said that he thought it was recorded, but Mrs. Thompson, after diligent search, found it in a trunk among her own papers, and then he took it for her to the clerk's office, in August, 1876, and had it recorded. The tax books showed that the property was given in as *Thompson's own*, by him, in 1875, but as agent of his wife in 1876. Thompson also testified that he had paid most of the money to debts, and he also testified that all was paid by the 1st of January, 1876, and that his wife had no money except that received from her father's estate.

We cannot say, from this evidence, which we have set out very fully, that the verdict is against the decided weight thereof, and that the jury first, and the presiding judge afterwards, were wrong in the conclusion to which they came. It is true that Mr. and Mrs. Thompson both testified that the trade was fair, and not made to defraud or delay anybody, and that the whole of the purchase money was paid before the judgment of Mrs. Feagin, to-wit: by the 1st of January, 1876; but that is impossible, from the dates and figures; for she did not get money enough to pay them by that time—some fourteen hundred dollars of it being received in the year 1876, after the judgment was obtained; and although Mrs. Thompson may have known nothing of the debt, when she traded in 1874, she was bound to know of the suit in 1875, and the judgment in 1876. The jury seem

to have based their conclusion on the facts and figures of the case.

A debtor sold to his wife all he possessed of visible property, early in 1874; he gave this note in July as evidence of his debt to this plaintiff; he executed a deed to his wife in September thereafter; it was not recorded until August, 1876, after judgment had gone against him on the debt; more than enough money to pay the judgment was paid by the wife to him after the judgment, for she did not have it to pay before; three promissory notes, for $2,000.00 each, were made by him to his wife; one is no sooner made than it was marked paid, or canceled, because of former indebtedness for lot 81, and its rents. These circumstances authorized the jury to conclude that the transaction was gotten up to hinder, delay and defraud this creditor; that it was not *bona fide;* that it is questionable whether full value was paid, to say the least; and that, *ex æquo et bono,* this debt, contracted on the credit of this land as the husband's property, ought to be paid out of it in preference to a title of the wife, kept secret from all the world, the husband having remained in possession all the while—the deed not being executed at all for months, and, when executed, not being spread upon record, but the husband, up to the time he was sued, still claiming the title, and swearing that the land was his, by giving it in for taxes as his own property.

Judgment affirmed.