## FRANKLIN *vs.* THE STATE OF GEORGIA.

1. On the trial of a defendant for murder, the throat of the deceased having been cut and the character of the wound being important to elucidate the issue, a photograph of the wound was admissible in evidence.

2. Where it was sought to connect a defendant with a homicide by reason of his possession of articles of apparel belonging to the deceased, a statement of the deceased made before his death, to the effect that the shoes and socks taken from defendant's feet belonged to him, was admissible, it having been made in the presence of defendant and not denied by him.

3. That shoes and socks were taken from the feet of a defendant after his arrest, or that he was told to take them off by the police officers, and did so, without any objection being made by him, does not render evidence identifying such property inadmissible, it being otherwise competent.

(*a.*) This case differs from *Day vs. State*, 63 *Ga.*, 667.

4. Such articles of apparel were admissible in evidence ; and so also were boots, found at the scene of the crime and corresponding in description to boots which had been worn by the defendant.

(*a.*) A knife, shown to have been in defendant's possession a day or two after the throat of deceased was cut and then presenting traces of blood, was admissible in evidence.

5. While, as a general rule, a case should not be re-opened at the instance of the state after the witnesses for the defendant have been discharged, at least without opportunity to send for them ; still where no witnesses were examined for the defendant except on the subject of good character and for purposes of impeachment, and he did not show the presiding judge that the discharged witnesses would testify so as to affect the point to which the new witnesses were called, we cannot say that the judge abused his discretion in allowing the solicitor general to re-open the examination and introduce new testimony.

6. Where the testimony introduced by a defendant related solely to his character and to the impeachment of witnesses for the state, and the judge called the attention of the jury to such testimony, he thereby called attention to the proof of good character.

(*a*.) If a more specific charge on that point was deemed necessary by counsel for defendant, they should have called the attention of the court to such omission.

7. Where statements of the person killed were made before his death in the presence of defendant and not denied by him, to the effect that the shoes and socks found on the latter belonged to him, and the court in admitting this evidence stated that he did not admit it for the purpose of identifying the property but as statements made in the presence of the prisoner, this was neither an expression of opinion by the judge, nor did it necessitate a charge on that subject.

8. Circumstantial evidence proves certain facts which sustain by their consistency a hypothesis claimed.

9. A ground of error which contains numerous items or points, but specifies no one as erroneous, is too general, and will not be considered unless all the items are erroneous.

(*a*.) We find no error in this ground.

10. Though a witness be impeached as to general character, yet if corroborated in a material point, he may be believed, and if impeached by one witness as to character and sustained by another, it is for the jury to pass upon the credit due him.

11. A ground of a motion for new trial that the entire charge is vague, argumentative, and does not present the law of the case, without specifying any errors, is too general.

12. The verdict is supported by the evidence.

October 31, 1882.

Criminal Law. Evidence. Practice in Superior Court. Witness. Before Judge SIMMONS. Bibb Superior Court. October Term, 1881.

C. H. Franklin was indicted for the murder of Mit Bryant. On the trial, the evidence for the state showed, in brief, the following facts:

Franklin was at work on the place of one Freeman and digging a ditch in the garden. On Saturday, July 30th, 1881, he went to Macon. About eight o'clock at night, he went into a store on Pine street, and shortly after eleven o'clock he again went into the same store. He then purchased some tobacco and went up Pine

street. As he left the store, he called to a negro who joined him, and they went off together. In about two or three minutes some one came to the store and reported that there was a man with his throat cut on Pine street. The clerk went to see about the matter, and found Bryant lying on the sidewalk with his throat cut. He was down Pine street in an opposite direction from that taken by Franklin, and about fifty or fifty-five yards from the place where Franklin was last seen. According to the account of another witness, as he was passing along Pine street, about eleven o'clock at night, he met Bryant in company with a white man and a negro about the place where the murder occurred. The white man wore side whiskers and a moustache. He had on old and muddy looking boots. He and the negro had Bryant down upon the sidewalk. Attracted by the noise, the witness asked what the matter was, to which the white man responded that a friend of his was drunk and he was trying to get him home, and asked the aid of the witness in doing so. The latter took hold of Bryant on one side and tried to assist him. The man searched Bryant, stated that he was a United States marshal and presented a badge. He also stated that Bryant had $500.00. Bryant was very drunk, and the witness said that they could do nothing with him without a hack, and advised that he be left where he was, and that he would be all right on the morrow. The witness thereupon went away leaving the white man and the negro with the drunken man. After some time, probably three quarters of an hour, the witness returned the same way, found Bryant with his throat cut, and gave the alarm. When found, Bryant was barefoot and had a boot with an umbrella under his head and another boot beside him. The witness who found Bryant had been drinking some, but stated that he was not drunk. He had seen the same white man who was with Bryant earlier in the evening. He thought it was the prisoner, but could not be positive as the man wore side whiskers and a moustache, while he prisoner had, at the time of trial, a full beard. De-

fendant reached the place where he was staying about twelve o'clock at night. He then had on shoes. 'The next morning he exhibited a knife which had stains upon it, which stains (in the language of a witness) "imitated blood." Defendant stated that on the previous night he had loaned his knife to a friend, and that when this friend returned it, it looked like he had cut a dog with it. The knife was in court and was identified. Defendant was arrested on Sunday and carried to where Bryant was. The latter was able to speak in a low tone, above a whisper. While defendant's hands were tied, the police removed the shoes and socks he wore, and showed them to Bryant who identified them as his own. Defendant was about six or eight feet distant, and could have heard what Bryant said if he listened attentively, though the witness who detailed these facts could not state positively that he did hear. A few minutes later, when the police had finished the object of their visit and were leaving, defendant stated that he bought the shoes at Milner. There was testimony to the effect that the shoes looked like Bryant's shoes and that the boots found near Bryant looked like the boots previously worn by defendant, and that defendant wore side whiskers at the time of the homicide. Bryant lingered for some time, and then died from the effects of the wound.

There was much conflicting testimony on both sides as to character, credibility of witnesses, etc., not necessary to detail here.

The defendant in his statement said that he had been on Pine street about eleven o'clock at night, and at the store where he was seen; that he went directly to the place where he was stopping, and knew nothing of the cutting; that he had bought the shoes and socks which were taken from his feet by the police in Milner; that when he was arrested he was tied, and accused of having committed the crime, with abusive language on the part of the police; that the shoes and socks were exhibited to

Bryant, who thereupon shook his head as if indicating a negative, and whispered something that defendant did not understand.

The jury found the defendant guilty, and recommended that he be imprisoned for life. He moved for a new trial on the following grounds:

(1.), (2.), (3.) Because the verdict was contrary to law and evidence.

(4.) Because the court admitted in evidence the photograph of the wound of deceased.

(5.) Because the court admitted the following evidence of Wood, a witness for the state: "He (Bryant) called Franklin, Ben, or Bud, or some such name. We made him (Franklin) pull his shoes off, and showed them to Bryant. He (Bryant) then took them in his hands and said: 'These are my shoes.' We then made him pull off his socks and handed them to Bryant, and he identified them; said they were his. Franklin did not say anything. He sat there quiet and did not have anything to say."

(6.) Because the court admitted in evidence the testimony of C. M. Wood, to the effect that while the defendants hands were tied, his shoes and socks were pulled off, handed to Bryant, and that Bryant identified them.

(7.) Because the court erred in admitting the knife, socks, boots and shoes, offered in evidence by the state.

(8.) Because the court permitted the state to re-open the case and re-introduce two witnesses under the following circumstances: Both the state and the defendant had closed on Friday evening, November 18th, and one of the defendant's counsel had opened the case to the jury, when the court adjourned until the next morning. While defendant's counsel was making his argument next morning, and had about concluded the same, the solicitor offered said witnesses to prove material facts, counsel for defendant stating that all the witnesses for defendant had been discharged the evening previous. [The testimony of defendant's witnesses was solely in respect to

Franklin *vs*. The State.

the character and credibility of the state's witnesses; and one of the witnesses recalled testified that the boots found near Bryant were the same as those worn by the white man whom the witness had seen with him.]

(9.) Because the court neglected to charge the jury in reference to the good character of the defendant.

(10.) Substantially the same as (3.) and (4.)

(11.) Because the court, when he admitted the evidence as to what Bryant said in presence of defendant, that the shoes and socks were his, remarked that he "admitted it not for the purpose of identifying them, but as a statement made in presence of the defendant, and then failed and neglected to charge the jury in reference thereto." · [In regard to this ground, the court added the following note: "The remark was made to defendant's counsel in reply to defendant's motion to rule out the evidence."]

(12.) Because the court charged the jury as follows: "That is, circumstantial testimony proves certain facts, and these sustain by their consistency the supposition or hypothesis claimed by the state."

(13.) Because the court charged the jury: "Now, in coming to your conclusion in this matter, you may look to all the testimony for the state, and the testimony for the defendant, the defendant's statement, and say from that testimony whether he did the cutting or not. You may look to where he was on that night, when he was seen by the witnesses, in whose company he was, what he was doing, whether he was with Bryant that night or not, and if he was with him, what was done on that occasion. You may look to see whether Bryant had his throat cut upon that occasion or not, where he was before that night, what condition he was in, whether any part of his clothing had been taken from him, and if so, whether any part of that clothing was found upon the person of the prisoner, and if so, whether he has accounted for how he came in possession of it. Also look to his statement,

and see whether he has explained that or not, whether he has explained his whereabouts on that night. Look to the knife that was found, whether it had blood upon it or not, and see whether he has accounted for that satisfactorily to the jury.

(14.) Because the court charged the jury: "If a witness is proved to have general bad character, and from that character a witness would not believe him on his oath, that is an impeachment under the law; but he may be sustained by same proof of good character—that is for the jury to say whether he is sufficiently impeached or not; but if impeached by the first mode I have told you of, the jury may still believe him, if he is corroborated in any material point of the testimony.

(15.) Exception to the charge as a whole, and to each part of it, as being vague, indefinite, argumentative, and not presenting the law of the case properly to the jury, and not carrying the issues in the case.

The motion was overruled, and defendant excepted.

C. L. BARTLETT; N. E. HARRIS; W. DESSAU; W. H. FELTON, JR., for plaintiff in error.

J. L. HARDEMAN, solicitor general, for the state.

JACKSON, Chief Justice.

The defendant was convicted of murder, and being denied a new trial, assigns that denial, on the grounds alleged in the motion therefor, as error. The errors alleged when analyzed and reduced to points are not so numerous as they appear when spread over a large surface. We endeavor to reduce them, and consider the points of law so made.

1. A photograph of the wound of the deceased was admitted as evidence over the objection of defendant. The throat of deceased was cut; the character of the wound was important to elucidate the issue; the man was

killed and buried, and a description of the cut by witnesses must have been resorted to; we cannot conceive of a more impartial and truthful witness than the sun, as its light stamps and seals the similitude of the wound on the photograph put before the jury; it would be more accurate than the memory of witnesses, and as the object of all evidence is to show the truth, why should not this dumb witness show it? Usually the photograph is introduced to prove identity of person, but why not to show the character of the wound? In either case it is evidence; it throws light on the issue. 1 Bish. Crim. Proc., 1097; Wharton's Crim. Ev., 544, and cases cited in both texts.

2. The statement of deceased touching his owning the shoes and socks defendant had on, and which were pulled off his feet, made in defendant's presence and not denied, was admissible. The attention of the accused must have been arrested by the statement, he could have heard and did hear in all probability, and the circumstances were such as to let the jury pass upon it. *Moye vs. The State*, 66 *Ga.*, 740.

3. It was further objected that the pulling the shoes and socks off the prisoner's feet, or inducing him to do it, rendered the evidence touching their identification inadmissible, under the ruling in *Day vs. The State*, 63 *Ga.*, 667. But it will appear in that case that the accused was forced to put his feet in the tracks which had been made, and the principle there ruled is that a defendant cannot be compelled to criminate himself by words or acts. Here it seems that he did not object, and really that the police pulled the shoes off. It was their duty to gather the fruits or evidences of crime as testimony against him, and the fact that he had on apparel of the deceased connected him with the homicide, whether shoes, socks, or other clothing. It was what he wore which witnessed against him, and not any act he did under coercion, such as being forced to put his feet in tracks somebody had made. 1 Greenleaf Ev., 34; Bishop's Crim. Proc., 210, 211, and

·cases cited. Besides, when accused before of having on shoes of deceased, he did not deny it. So the testimony objected to if ruled out, would have left other testimony on the point in, and a new trial on this ground need not have been granted.

4. Of course these articles themselves, as well as the knife, and boots left at place of homicide, were admissible. 56 *Ga.*, 114; *Moon vs. State*, Feb. Term, 1882.

5. To re-open the case for more testimony is within the ·discretion of the presiding judge. To advance the ends ·of justice and get at the truth should be the sole object ·of a trial; and while as a general rule this should not be ·done—that is, the case should not be re-opened after witnesses on the other side are discharged, at least without an opportunity to send for them—yet when the other side had examined no witness except as to the character of defendant and for purposes of impeachment, and did not show the presiding judge that the discharged witnesses would testify so as to affect the point to which the new witnesses were called, we cannot say that the judge erred and abused his discretion in allowing the solicitor general to re-open the examination and to put in new testimony.

6. The court did call the jury's attention to the witnesses for the defence, to their testimony, and as that testimony related solely to the character of defendant, except that which went to impeachment of witnesses, the court thereby did call the attention of the jury to proof of good character. But if that had not been done, and was deemed important by defendant's counsel, it was their duty to call the attention of the judge to the omission, and it would doubtless have been more explicitly charged. 20 *Ga.*, 523; 26 *Id.*, 380.

.7. The jury stated to counsel the ground on which the testimony objected to was admitted; he did not express any opinion about it to the jury or intimate any, merely saying it is admitted on the ground that·defend-

ant did not deny the statement of deceased, and not as dying declarations ; we see no error in it, and no necessity to charge the jury upon it.

8. The twelfth ground in the motion, which excepts to the charge of the court, or an extract from it defining circumstantial evidence, is sustained by the Code, §3748, and of course is not error.

9. The thirteenth ground relates to the summing up of the court, contains numerous items, specifies no one item as erroneous, and, therefore, unless all be so, that ground cannot be considered, because it is broad and general and not specific. 60 *Ga.*, 82. But if considered, and ruled upon here, we find no error in it.

10. The fourteenth ground is that the court erred in charging to the effect that though a witness be impeached as to general character, yet if corroborated in a material point he may be believed, and that if impeached by one witness as to character, and sustained by another, it is for the jury to pass upon the credit due to him—the entire credibility of the witness in such cases is for the jury. The Code, as well as the decisions of this court, establish the ruling as right. Code, §§3874, 3875 ; *Williams vs. State*, present term, not yet reported.

11. The fifteenth ground attacks the entire charge as vague, argumentative, not presenting the law of the case, and not covering the issues. Wherein it is thus objectionable, is not pointed out and specified, and we fail to see it.

12. The verdict has sufficient testimony on which it can legally rest. It is not for us to decide on the credibility of witnesses, and the deductions to be drawn from appearance, manner of testifying, conduct on the stand, and the like. These are for the jury, with the cool head of an experienced and able judge supervising their finding, and hearing and seeing all that they saw. If both the jury and such a judge find the defendant proved in law to be guilty, and imprison him for life, our

view of our law and the distinct rights of a *nisi prius* and a reviewing court, will not authorize us to interfere. The question is simply, is there evidence to uphold the verdict? If so, it is a legal verdict, and not contrary either to evidence or to law. The facts that the accused had on the shoes and socks of deceased, that he left his own boots with the deceased, that he talked about the appearance of blood on his knife as made by a person to whom he loaned it in cutting a dog, that this person was neither named nor produced on the trial, that he admits himself, in his statement, he was that night, and near that time of the night, near the scene of the throat-cutting, these point to him as the guilty man. There is no other reasonable hypothesis, which excludes this conclusion, to be drawn from this testimony. There is no other person to whom these facts point. They, none of them, point to any other man as probably, or even suspiciously, guilty. If the sole witness who saw him with the drunken man whose throat was cut by somebody, was mistaken as to his identity, or was unable to testify positively to that identity, the boots which he wore in the early part of the night, found with deceased, and the shoes and socks which he wore afterwards, and the explanation about the appearance of blood on his knife, and the bare feet of the man whose throat was cut, go to supply the lack of positive evidence of identity, and surround him with so many links of identity as to chain him by circumstances to the place of the cutting and to the perpetration of the murder. Assuredly they make altogether such an array of circumstances as to support the verdict of the jury and the judgment of the court below so strongly that this court must leave the case where the jury and presiding judge have said that evidence and law place it.

Judgment affirmed.