## SISK *v.* STATE

[No. 55, September Term, 1964.]

*Decided·November 20, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*John Paul Rogers* for appellant.

*Stuart H. Rome, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Alfred J. O'Ferrall, III, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is appellant's second attempt to offset his conviction of obtaining money by false pretenses under Code (1957), Article 27, Section 140. In his first appeal, *Sisk v. State,* 232 Md. 155, we held that the Regiscope photograph, which convicted him, had not been properly authenticated, and remanded for a new trial.

Although State's Exhibit No. 1, a check,[1] was admitted into evidence over appellant's objection, the case turns upon the admissibility, *vel non,* of a Regiscope photograph, State's Exhibit No. 2, and the negative from which it was produced, State's Exhibit No. 3A.

Appellant challenges the admissibility of these Exhibits, and the sufficiency of the evidence even if the exhibits were admissible.

There can be little doubt that photographs are, and have been for many years, an important and valuable source of evidence in the Courts. It should be borne in mind that photographs, when properly authenticated, are as a general rule held to be admissible under two distinct rules: one, to illustrate a witness' testimony (in instances of this nature the photographs have been analogized to maps and diagrams) ;[2] and two, as "mute," "silent," or "dumb" independent photographic witnesses.[3] *Mc-*

---

1. This check was dated August 1, 1962; was in the amount of $112.42; was drawn on the Maryland Trust Company, purportedly by Talbot & Hanson, Inc.; the named payee was Charles A. Neubert, Jr.; and a signature, appearing to be his endorsement, together with his address, was on the back thereof.

2. And there are jurisdictions which still limit the use of photographs to "illustrative" purposes. III Wigmore, Evidence (3rd ed., 1962 Pocket Supp.), p. 70.

3. A reading of the briefs and the record extract in the former

*Kelvey, Evidence,* (5th ed.) §§ 378-390 *Scott, Photographic Evidence* §§ 602, 603; *McCormick, Evidence* (1954) § 181; III *Wigmore, Evidence* (3rd ed., 1962 Pocket Supp. § 792 a— apparently a change from the original text) ; 20 Am. Jur., *Evidence,* §§ 727, 728; Gardner, "The Camera Goes to Court," 24 N.C.L. Rev. 233; *People v. Bowley,* 382 P. 2d 591 (Cal.) ; *State v. Goyet,* 132 A. 2d 623 (Vt.) ; *Hancock v. State,* 47 So. 2d 833 (Miss.) ; *Watkins v. Reinhart,* 9 So. 2d 113 (Ala.) ; *Hartley v. A. I. Rodd Lumber Co.,* 276 N. W. 712 (Mich.) ; *King v. State,* 187 N. W. 934 (Neb.) ; *Franklin v. State,* 69 Ga. 36; *People v. Doggett,* 188 P. 2d 792 (Cal.).

In the *Bowley* case (1963), *supra,* the Supreme Court of California reviewed and analysed the authorities in some detail. It quoted from Garner, *op. cit.,* in which it was stated that, "Photographs may, under proper safeguards, not only be used to illustrate testimony, but also as photographic or silent witnesses who speak for themselves * * *. A picture taken with adequate equipment under proper conditions by a skilled photographer is itself substantive evidence to be weighed by the jury." The Court went on and held "that a photograph may, in a proper case, be admitted into evidence not merely as illustrated testimony of a human witness but as probative evidence in itself of what it shows."

Of course, a vast majority of the cases involving photographs deal with "illustrative" photographs, as an examination of the previous decisions of this Court will disclose. In fact, this seems to be the first time that we have been called upon to consider, specifically, the second rule mentioned above. The learned author in Gardner, *op. cit.,* points out that in considering the admissibility of photographs, there are always two factors involved: competency, and materiality. As the statement of facts will shortly disclose that the Regiscope photograph was, obviously, material to the issues involved, we shall proceed to a consideration of its competency, *i.e.,* whether the State properly authenticated it by establishing that the photograph is a

---

appeal does not disclose with certainty which theory the State was attempting to invoke there; however, it is clear that the Regiscope photograph was not properly authenticated thereunder either.

reasonably accurate and honest representation (photographs are seldom, if ever, completely accurate in every detail) of the facts it purports to represent.

We do not here set forth in detail the evidence in the previous trial relative to testimonial sponsorship of the photograph; we did so in the opinion in the formal appeal. We now state what this evidence was in the second trial (as well as the evidence generally, because its sufficiency for conviction is challenged) ; and an examination thereof will disclose the crucial differences between it and that offered at the first trial.

Stanley E. Fleming, Merchandise Manager for Montgomery Ward & Co. at its Monroe Street store, identified his initials on the check, which approved its cashing by the cashier. He explained that a check drawn "in this amount" requires one of the supervising people in the store to identify the person by some identification that he has, and assuming responsibility for the cashing of the check. James F. McNulty, an official of the bank, stated the check was drawn on the Maryland Trust Company on an account that had been closed since 1955. Charles A. Neubert, Jr., testified that he had never seen the check before presentation of it to him at the trial, and the endorsement of his name and address on the back thereof was not his "signature"; he was not in Ward's store on the date the check was cashed; he had never had any connection with Talbot & Hanson, Inc.; sometime prior to August 1, 1962, his card case, containing some 10 to 12 credit and membership cards and his driving license, "was missing" from the glove compartment of his car.

William Shraver, Chief Investigator for Montgomery Ward, was then called. He stated that he received the check from the Chief Cashier after it was returned unpaid; that he went to the cashiers' cage where there is located a Regiscope camera and removed the film therefrom and sent it, by mail, to the "Regiscope Company" in Fairfax, Va., with a description of the check and the Bates number thereon, and a request for a picture. The witness further testified that he had taken a course of instruction on the operational procedure of the Regiscope Company, which included a complete explanation of the camera and its functions and the company's procedures for developing and

storing the film, etc., so that he was "thoroughly familiar with their operation." The Bates numbering machine is one so designed that each time the machine is stamped the number printed by it is changed one digit. The number is printed in the center of the top of the check and in the instant case is 136278. As requested by the witness, the "pictures" were returned to him by mail. The picture, which was later introduced into evidence, was "a complete photograph of a transaction of cashing the check. The bottom part of the photograph is a picture of the person cashing the check, and the top part * * * is the check and the identification used to cash the check." The Regiscope pictures are taken with a camera which contains two lenses; one points straight forward in the direction of the person cashing the check; the other points down in the direction where the check and identification are laid on the base of the camera. The camera is operated by a single lever, which, when pushed, takes two pictures, simultaneously, on the same negative. The picture, State's Exhibit 2, contains a picture of the check involved herein, which had been previously identified. The camera has a fixed focus; so the farther away a person is from the front of the camera, the smaller a person appears upon the picture. From his experience, it was witness' opinion that appellant was against the counter just outside the cage window when the picture was taken. On September 28, 1962, the witness had a conversation with the appellant. After looking at the picture, State's Exhibit 2, appellant stated that the person pictured thereon was he; that he had cashed a check "at Montgomery Ward that day," but not the check on the picture; and that he did not care to tell "what the other check was."

Upon cross examination, the witness stated that he was not present when the Regiscope picture involved was taken, or the negatives developed. His opinion at this time was different from that expressed at the first trial. He did not now believe that it would be possible for one cashier to photograph six different people with the same check (as he had testified at the first trial), nor did he believe it possible to photograph the same person with six different checks; because each person is required to produce a separate identification, and that identification is returned to each individual after each photograph is taken, and,

should a different check than the one actually presented be placed on the platform to be photographed along with the person who has presented the check, it would not match up with the identification used. In the witness' opinion, for a Regiscope photograph to show a person other than the one intended to be photographed, the one so intended "would have to step completely away from the window and someone else step up to the window."

Marian Stevens, who had been head cashier at the store for some 5 years, said she and her assistants cashed about 25 to 30 checks a day and they had operated the Regiscope machine on many occasions. She could not say whether it was she, or one of the assistants, who took the picture. The camera "sets right up front," on the front of the counter, inside "her cage." The camera can only be operated by one person at a time; it is movable, and is turned to one side when not being utilized; when being used, "we slide it in front of the window" and take a picture. The camera is only operated at one window, which is a small one "up top of a counter" (upon which a special light had been installed) so that the person whose picture is being taken is "right in front of you." The witness stated the picture was "taken at Montgomery Ward. The Bargain Room is in the background, and that would be a picture of the person, the check, and their identification."

Joseph E. Slattery, an employee of Filmdex Corporation known as Regiscope, explained in detail (and demonstrated to the court below) how the camera works, and he also explained how his company processes and stores the films. Much of his testimony corroborated and confirmed that of the witnesses Shraver and Stevens; consequently, only the portions of his testimony that added to theirs will be set forth. Regiscope received the roll of films and the request for a picture (by specific number, name of company, name of bank and so forth). The witness did not develop the negatives himself, but he examined the roll of developed film in the film reader and found the negative of the "particular transaction." An enlargement of it was made and sent to Montgomery Ward as requested. The enlargement was a true representation of the negative. The witness also examined the transactions on the roll of film imme-

diately preceding and following the subject one, and found them to be full and complete transactions; the first was a picture of a woman who cashed a Treasurer of the United States check; the latter a man who also cashed a Treasury check.

The film used in taking the Regiscope pictures is perforated on one side only, so the film "cannot be put in reverse" as this would tear the perforations. Hence, on the finished picture, the check is always above the person's picture. The camera used at Montgomery Ward's store has a fixed focus, with a depth of field of approximately three feet.

We think this evidence discloses that the possibility of the photograph not representing the transaction it purports to is extremely remote. Appellant admits the person pictured thereon is he. The picture itself, apparently, supports the expert's opinion that appellant was standing "up to the counter" when it was taken; and it portrays the check described in footnote 1, together with Neubert's driver's license, which had been "missing." The witness Stevens identified the picture as having been taken at Montgomery Ward's. The detailed explanation of the operation of the Regiscope camera, whereby pressure on a single lever causes two pictures to be taken simultaneously on a single negative, the fact that each identification is returned as soon as a picture is taken, and the fact that the transactions immediately preceding, and subsequent to, the one here involved were complete ones, make the possibility of error in the photograph (*i.e.*, a showing of appellant with someone else's identification) almost *nil*, in the absence of some intentional trickery to "fake" the photograph.

The quantum of authentication of showing that a photograph is reasonably accurate and correct in order to render it admissible in evidence must be considered in a relative sense. *McCormick, Evidence,* § 181; Anno: 9 A.L.R. 2d 903; *State v. Tatum,* 360 P. 2d 754 (Wash.). The testimonial sponsor of a photographic exhibit need not be its maker. *Consolidated Gas, Elect. Lt. & Power Co .v. State,* 109 Md. 186; *Wigmore, op.cit.,* § 794; *McCormick, ibid.;* Anno: 9 A.L.R. 2d 899. In the instant case, extrinsic evidence showed when, where, and under what circumstances the negative (and the enlargement thereof) was taken, and that it accurately portrays the subjects illus-

trated; and the trial judge, obviously, decided it was sufficiently accurate to be helpful to him in deciding the case. Under these circumstances, we hold that both the negative and the photograph made therefrom were sufficiently authenticated, and therefore properly admitted into evidence. The Supreme Court of Washington reached a similar conclusion relative to a Regiscope photograph in *Tatum, supra.*

From what we have said above, it becomes unnecessary to determine whether the photographs were admissible under Code (1957), Article 35, Sections 59, 60.

The only remaining question is the sufficiency of the evidence to sustain a conviction. We think it clear that under our decision in *Waye v. State,* 231 Md. 510 the evidence, without repeating it, was sufficient.

*Judgment affirmed.*