301 So.2d 853 (1974)
Charles Douglas APPLEGATE
v.
STATE of Mississippi.
No. 48045.
Supreme Court of Mississippi.
October 14, 1974.
Brooks & Guyton, Kosciusko, for appellant.
A.F. Summer, Atty. Gen., by Wayne Snuggs, Special Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice:
Appellant, Charles Douglas Applegate, was indicted, tried and convicted in the Circuit Court of Attala County of feloniously delivering and transferring marijuana to Roy Wraggs. Although the Court found that appellant was only 20 years of age and a first offender, he sentenced him to a term of six years in the Mississippi State Penitentiary.
On Sunday afternoon, May 6, 1973, Applegate visited his friend, Melvin Cook, in the Attala County jail. Faye Cook was also visiting her husband. Melvin Cook, in appellant's presence, asked his wife, Faye, to get him "a package of Kool cigarettes and a can of Prince Albert". In about 30 minutes, Faye Cook returned to the jail with a pack of Kool cigarettes and a can of Prince Albert tobacco in a small paper bag. It being a Sunday afternoon, and the deputy sheriff and jailer, Walter Perry, being off, Faye Cook requested Applegate to hand the bag containing the pack of Kool cigarettes and the can of Prince Albert *854 through a back window to Roy Wraggs, the trusty, for delivery to her husband, Melvin Cook.
The testimony was that it was customary on Sunday afternoon when the jailer was off-duty to hand cigarettes, tobacco and toilet articles, through the window to a trusty for delivery to a prisoner. It was difficult to reach this window because the approach to it was up a rather steep incline. Applegate testified that when Faye Cook handed him the paper bag he glanced at the pack of Kool cigarettes in its cellophane wrapper and noticed the Prince Albert tobacco can which extended to the top of the paper bag, but neither opened the pack of Kool cigarettes nor the Prince Albert can. He delivered the paper bag to Roy Wraggs, the trusty, who was standing inside the window.
Wraggs testified what he then did:
"I searched them cigarettes and I pulled the 'bacco up and I noticed the paper had been wrinkled on it and I pulled it on out  there was some yellow cigarette papers in the bottom of it and some stuff that looked like lespadeza seed  I knew it wasn't 'bacco. I hadn't seen any  none in my life so I asked Lavon Ashford what does marijuana look like. He told me. I asked him to carry it on down there and give it to Donald Martin and  forgit the other young man that was in the jail there with him".
When the jailer, Walter Perry, returned about 10 o'clock Sunday night, Wraggs told him what had occurred. Perry decided that a search should be made of the common cell or bullpen where Melvin Cook and two other prisoners were confined. In response to his call, Kosciusko policeman John Campbell joined Perry and helped him conduct the search. Campbell found a Prince Albert tobacco can underneath a mattress in the bullpen. Both Perry and Campbell testified that the Prince Albert tobacco can contained tobacco on top of some yellow cigarette papers, and in the bottom "there was a crumbled-up, green, leaf looking substance". Perry delivered the can in a sealed brown envelope to Dr. Arthur Hume, Director of the Mississippi State Crime Lab. Hume turned it over to Diane Miller, a Lab toxicologist for analysis. Diane Miller testified that the green leafy looking substance was marijuana.
The indictment charged that Charles Applegate:
"[D]id wilfully, unlawfully, and feloniously deliver and transfer a controlled substance, to wit: cannabis sativa, commonly known as marijuana, to Roy Wraggs, a human being, ..." (Emphasis added).
On this scant testimony, the jury found the defendant guilty as charged, and the court sentenced him to a term of six years in the state penitentiary.
Of the seven assignments of error, we will discuss only these two because they are dispositive of this case:
"The evidence is insufficient to sustain a conviction of the appellant of the offense for which he is charged"; and
The trial court erred in sentencing the defendant to a term of six years in the state penitentiary without first sending the defendant to the Mississippi State Hospital at Whitfield, Mississippi, or the East Mississippi State Hospital at Meridian, Mississippi, for rehabilitative treatment.
Mississippi Code Annotated Section 41-29-139(a) (1972), provides:
"Except as authorized by this article, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."
The testimony is simply not sufficient to prove directly or inferentially beyond a reasonable doubt that Applegate intended to deliver a controlled substance to Wraggs, the jail trusty. Applegate's testimony, that he just glanced at the paper *855 bag containing the pack of Kool cigarettes and the can of Prince Albert but did not open either, was uncontradicted. Usually delivery is associated with a sale or gift, but Applegate neither made a sale nor gave anything to Melvin Cook. At her request, he accommodated Mrs. Cook and acted as delivery boy of a small paper bag containing a pack of Kool cigarettes in a cellophane wrapper and a Prince Albert tobacco can. He had possession just long enough to hand the paper bag through a window to the jail trusty, for delivery to Melvin Cook. Applegate was the conduit, if you please, from Faye Cook to her husband, Melvin Cook. He did the same thing that Roy Wragg, the trusty, did; the only difference being that Wragg, the trusty, knew what he was delivering because he testified that he opened the Prince Albert tobacco can and examined its contents.
It was an essential element of the offense with which Applegate was charged that he have knowledge that he was delivering a controlled substance and that he intended to deliver a controlled substance. Of course, this knowledge could be proved by direct or circumstantial evidence; it was proved by neither in this case. For that reason, the judgment must be reversed and the cause remanded for a new trial.
In remanding this case, we also call attention to the clear legislative intent, in enacting the Uniform Controlled Substances Law, which is expressed in this way in the Act itself:
"(g) It is the intent and purpose of the legislature to promote the rehabilitation of persons convicted of offenses under the Uniform Controlled Substances Law by providing for incarceration of such persons in facilities separate from the state penitentiary and the several county jails or county farms." (Emphasis added). Miss. Code Ann. § 41-29-150(g), (Supp. 1973).
Following up on this praiseworthy and compassionate intent and purpose, the Legislature provided:
"(c) Any person who has not reached his twenty-first (21st) birthday, who is convicted of a first offense under subsections (d) or (e) of section 41-29-139, and who is sentenced to a period of confinement shall be confined at the Mississippi State Hospital at Whitfield, Mississippi, or at the East Mississippi State Hospital at Meridian, Mississippi, for the term of such sentence. Those persons so confined at said institutions shall be required to abide by all reasonable rules and regulations promulgated by the director and staff of said institutions. Any persons so confined who shall refuse to abide by said rules or who attempt an escape or who shall escape, shall be transferred to the state penitentiary or to a county jail, where appropriate, to serve the remainder of the term of imprisonment; this provision shall not preclude prosecution and conviction for escape from said institutions.
"(d) Any person who has not reached his twenty-first (21st) birthday and who is convicted of a first offense under subsections (a), (b), or (c) of section 41-29-139, shall, or of a second or subsequent offense under subsections (d) or (e) of section 41-29-139, in the discretion of the court, may be confined under the terms set out in subsection (c) above for all or any portion of the sentence imposed." (Emphasis added). Miss. Code Ann. § 41-29-150(c) and (d) (Supp. 1973).
Reversed and remanded for a new trial.
RODGERS, P.J., and SMITH, WALKER and BROOM, JJ., concur.