STATE OF WEST VIRGINIA

*v.*

JESSE JAMES DUNN

(No. 13771)

Decided July 11, 1978.

*Pinsky, Barnes, Watson, Cuomo & Hinerman, Frank Cuomo, Jr., and Charles E. DeBord, II* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Claude A. Brown*, Assistant Attorney General, for defendant in error.

MCGRAW, JUSTICE:

Defendant was indicted on January 17, 1975, by the Grand Jury of Ohio County, for the delivery of ten tabs of lysergic acid diethylamide (L.S.D.), a Schedule I controlled substance. On July 2, 1975, he pleaded not guilty to the charge. A jury returned the verdict finding the petitioner guilty as charged. He was sentenced to a term of one-to-five years and, thereafter, filed this timely appeal.

The State's case at trial consisted of an Officer McCormick, who testified that he made the buy from the defendant, and three police officers who were charged in the chain of custody with possession of the alleged controlled substance. The defendant, Frank Dunn, his brother, and Victoria McDonald, his co-habitant, testified on his behalf.

Defendant appeals his conviction on the grounds that:

1) The court failed to instruct the jury on intent necessary for the defendant to be found guilty of delivering a controlled substance;

2) The Court failed to instruct the jury that it was necessary for the defendant to have knowledge that the substance delivered was a controlled substance at the time of delivery;

3) The Court refused to permit the defense to examine notes of Officer William McCormick from which he testified to refresh his recollection, and which represented the only contemporaneous records of the evidence surrounding the alleged sale;

4) The Court refused to admit a relevant picture showing the physical appearance of the defendant at or around the time of the alleged sale, which photograph contradicted identification in the testimony of officer William McCormick;

5) The statute under which the defendant was indicted is unconstitutional because it delegates legislative powers to the executive branch, being the Board of Pharmacy, and which board prohibits the controlled substance pursuant to said delegation under which the defendant was indicted and tried, the court failing to uphold the demurrer of the defandant to the indictment;

6) The defendant was prejudiced by the opening statement of the prosecuting attorney who stated that it was up to the defendant's attorneys to dispute evidence of the state, thus placing the unconstitutional burden on the defendant to rebut the evidence of the state and of placing the burden on the defendant to testify, and in refusing to grant defendant's Motion for Mistrial on this ground; and

7) The defendant was prejudiced by closing remarks of the state informing the jury of the expense and procedure of the state to have a police officer go underground and infiltrate the drug culture, thus classifying the defendant as a member of a drug cult without evidence of the same.

I

Defendant assigns as error certain remarks made by the Prosecuting Attorney in his opening and closing statements. In his opening statement, the Prosecuting Attorney said:

> There are three roles to be played here today. The attorneys play an important role. It is my responsibility to present the evidence from the State of West Virginia. It is defense attorney's responsibility to try and dispute this and present their side.

Defense counsel objected and moved for a mistrial upon the making of the statement. The court overruled the motion and refused to instruct the jury to disregard the comment. Defendant maintains the opening remark had the effect of erroneously informing the jury that a burden of proving innocence was upon him.

Our leading case on opening statement by prosecuting attorneys is *State v. Painter*, 135 W. Va. 106, 63 S.E.2d 86 (1950) wherein the general rule is set out in syllabus point 1:

> A judgment of conviction will not be reversed because of intemperate language used by a prosecuting attorney in his opening statement to a jury, which does not clearly prejudice the accused or result in manifest injustice.

Upon careful examination of the opening remark, we conclude that while the prosecutor's remark might have been potentially misleading in some sense, it neither clearly prejudices the accused nor results in a manifest injustice. Since it is conceivable that the jury could have entertained the wrong impression about the burden of proof and the presumption of innocence as a result of the remark, the better course of action would have been for the court to have admonished the jury that the burden is not on the defendant to disprove the State's case. But, the failure to so instruct the jury or declare a mistrial does not, in the context of this case, constitute reversible error.

In closing argument the prosecutor referred to Officer William McCormick, chief witness of the State, in this manner:

> He went undercover at the behest of the Bureau of Police to attempt to make some penetration of the drug culture existing in Ohio County, West Virginia.

Defense counsel objected to this statement, but the court overruled the objection. The closing remark, defendant contends, was calculated to inflame the passions

of the jury against a so-called "drug culture" and to identify him as a member of the same. *State v. Lewis,* 133 W. Va. 584, 57 S.E.2d 513 (1949) shows that reversible error can occur in closing argument when a prosecutor directs personal attacks toward a defendant in a manner calculated to prejudice and inflame the passions of the jurors.

The State points out that the prosecuting attorney did not say the defendant was a member of a drug culture but was merely referring to the basis for Officer McCormick's involvement in local undercover police work. Contrary to defendant's assertions, this is not a case like *Peck v. Bez,* 129 W. Va. 247, 40 S.E.2d 1 (1946) where a personal attack was deliberately directed against a party's character in order to prejudice the jury. We find that the closing remarks objected to did not prejudice the defendant or result in manifest injustice and, hence, we will not interfere with the trial court's ruling on this point.

## II

Defendant's argument that the statute under which he was indicted is unconstitutional has no merit. He was indicted under the Uniform Controlled Substances Act, enacted as W.Va. Code, § 60A-1-101 *et seq.* The original act in § 60A-2-201(a) delegated to the West Virginia Board of Pharmacy the power to designate, reschedule or delete controlled substances from the schedules set forth in the Code. Effective March 9, 1975, this section was amended so as to allow the Board to only *recommend* such changes to the legislature.

Defendant points to the case of *State v. Grinstead,* ____ W. Va. ____, 206 S.E.2d 912 (1974) and argues that the statute in effect at the time of this indictment unconstitutionally delegated legislative powers to an executive agency, the West Virginia Board of Pharmacy.

The state argues, and we agree, that whether the Board could, at that time, add or subtract substances from the schedules in the Code is irrelevant since the

substance in question, L.S.D., was and still is a Schedule I controlled substance by action of the West Virginia legislature. W.Va. Code, § 60A-2-204(d)(9), as originally enacted by the legislature, lists L.S.D. as a Schedule I controlled substance. Defendant, therefore, fails to show that L.S.D. was made a controlled substance as a result of any unconstitutional exercise of authority by the State Board of Pharmacy. *See State v. McGee*, ___ W. Va. ___, 230 S.E.2d 832 (1976).

## III

The defense was based in large part upon a claim of mistaken identity. The evidence put forth by the defense purported to show that the delivery was made not by Jesse James Dunn, but by his 17-year-old brother, Frank Dunn. The state indicated in pretrial discovery, and McCormick testified at trial, that the defendant did not have a beard at the time of the alleged delivery. The record indicates that at the time of his trial defendant has a rather fully-developed beard. The defense tried to have the defendant's Ohio drivers' license entered into evidence since the license issued on October 4, 1974 (one week before the alleged sale), contained a picture of the defendant showing a similarly well-developed beard.

The defense tried to lay a foundation for the admission of the photo by having the defendant verify it. He identified the Ohio driver's license and its date of issue, testified that his name and picture appears thereon and indicated when, where and by whom the picture was taken. He further testified that the picture on the license accurately reflects his appearance on the date the picture was taken, October 4, 1974, and that between that date and October 11, 1974, he did not shave. Immediately after this foundation was laid, defense counsel moved that the driver's license be entered into evidence. The circuit court refused to allow the picture to be entered into evidence, refused to let the jury see the picture, refused to give the defense time to subpoena the photographer, and refused to allow the defense to vouch the record with regard to the picture, ruling that "The

person who took the picture has to be here, I think."
The defendant cites as error the trial court's refusal to
admit the picture into evidence.

There are two theories upon which photographs are
entered into evidence. One theory, the "pictorial testi-
mony theory" had, until recent years, been advanced as
the only theoretical basis which could justify the receiv-
ing of photographs into evidence.[1] Under this theory,
photographs are admissible as the testimony of a quali-
fied witness who adopts or "sponsors" the picture as a
substitute or his verbalization of what the picture por-
trays. The photograph, once verified and made part of
some qualified person's testimony, becomes a nonverbal
expression of the sponsoring witness upon whose foun-
dation testimony its authenticity rests.

---

[1] Wigmore's leading treatise on evidence was recently revised so
as to accomodate both theories:

[The pictorial testimony theory] was advanced in prior editions of
this work as the only theoretical basis which could justify the
receipt of photographs in evidence. With later advancements in the
art of photography, however, and with the increasing awareness of
the manifold evidentiary uses of the products of the art, it has
become clear that an additional theory of admissibility of photo-
graphs is entitled to recognition. Thus, even though no human is
capable of swearing that he personally perceived what a photo-
graph purports to portray (so that it is not possible to satisfy the
requirement of the "pictorial testimony" rationale), there may,
nevertheless, be good warrant for receiving the photograph into
evidence. Given an adequate foundation assuring the accuracy of
the process producing it, the photograph should then be received as
a so-called silent witness or as a witness which "speaks for itself."
3 Wigmore, *Evidence* § 790 at p. 219-20. (Chadbourne rev. 1970).

The progressive trend is to acknowledge the existence of these
two distinct theories of admissibility. Several states have done so.
*People v. Bowley,* 59 Cal.2d 855, 31 Cal. Rptr. 471, 382 P.2d 591
(1963) (pornographic film); *Sisk v. State,* 236 Md. 589, 204 A.2d 684
(1964) (Regiscope photograph); *Ferguson v. Commonwealth,* 212 Va.
745, 187 S.E.2d 189 (1972), *cert. denied,* (Regiscope photograph);
*State v. Goyet,* 120 Vt. 12, 132 A.2d 623 (1957) (both theories ac-
knowledged). Writers and commentators have likewise done so. *See,
e.g.,* Scott Photographic Evidence § 601 (1942); McKelvey *Evidence*
§§ 378-90 (5th ed. 1944); Gardner, "The Camera Goes to Court," 24
N.C. L. Rev. 233 (1946); Comment, 8 Hast. L. J. 310 (1957); 29 Am
Jur. 2d, *Evidence* § 785 (1967); McCormick, *Evidence* § 214 (1972).

The other theory allows a photograph to be admitted under proper safeguards as a "silent witness" which "speaks for itself." Under this theory, the picture is not an explanation or illustration of a sponsoring witness, but is independent substantive, probative, evidence of what it shows. Examples of "silent witness" photographs are unmonitored cinematograph film recordings, *The Statute of Liberty* [1968] 2 All E.R. 195 "unsponsored" pornographic photographs, *People v. Bowley,* 59 Cal. 2d 855, 382 P. 2d 591, 31 Cal. Rptr. 471 *(1963), Regiscope check-cashing photographs, Oja v. State,* 292 So.2d 71 (Fla. App. 1974); *Sisk v. Maryland,* 236 Md. 589, 204 A.2d 684 *(1964); Ferguson v. Commonwealth,* 212 Va. 745, 187 S.E.2d 189 (1972), and burglar alarm photographs, Scott, *Photographic Evidence* § 197 (1942). But the most common type of "silent witness" photograph, admitted as such in the vast majority of jurisdictions, is the x-ray photograph. *People v. Bowley, supra;* Scott, *op. cit. supra;* Gardner, *supra* at 243-46; Comment, 8 Hast. L. Rev. 310, 312-13 (1957); 3 Wigmore, *op cit. supra* § 795 at n. 1; McCormick, *op cit. supra.*

The cases in this jurisdiction, as in the majority of jurisdictions, have not heretofore expressly recognized or adopted the "silent witness" theory of admission for photographs. In fact, our general evidentiary rule governing the admissibility of photographs, set out in syllabus point 1 of *Thrasher v. Amere Gas Utilities Co.,* 138 W. Va. 166, 75 S.E.2d 376 (1953), *appeal dismissed,* 347 U. S. 910, 74 S. Ct. 478, 98 L. Ed. 1067 (1954), expressly deals with only the "pictorial testimony theory":

As a general rule photographs of persons, things, and places, when duly verified and shown by intrinsic evidence to be faithful representations of the objects they purport to portray, *are admissible in evidence as aids to the jury in understanding the evidence;* and whether a particular photograph or groups of photographs should be admitted in evidence rests in the sound discretion of the trial court and its ruling on the question of the admissibility of such evidence

will be upheld unless it clearly appears that its discretion has been abused. [emphasis added].

Did the trial court abuse its discretion by failing to admit the picture under the "pictorial testimony theory?" Assuming that the picture was offered only for the purpose of illustrating or explaining petitioner's testimony at trial, we think it did.

The defendant verified the photograph as accurately reflecting his appearance on October 4, 1974, and explained fully the circumstances by which it was taken. The defendant's testimony as to his appearance at the time of the alleged crime was extremely important to his defense of mistaken identity. Much of his testimony entailed explaining what he looked like at the time and how it was his brother, not he, who made the alleged delivery.

The defendant, Jesse James Dunn, wanted to sponsor the photograph as a substitute for or supplement to his verbal explanation of his appearance. Having laid the necessary foundation, the defendant should have been permitted to use the photograph to pictorially represent his appearance. The jury would then determine the weight to be accorded the photograph from the testimony of the defendant, the sponsoring witness adopting the photograph as his nonverbal expression.

Under the pictorial testimony theory, photographs are not admissible as probative evidence of what they show. They are used merely to explain testimony, much like charts, diagrams, or maps are used and are, as set forth above in *Thrasher*, merely "aids to the jury in understanding the evidence." Therefore, the trial court erred in deciding that the person who took the picture had to be there to establish a foundation for admissibility under that theory. The law in most jurisdictions has for many years been that the photographer need not testify in order for a photograph to be admissible under the pictorial testimony theory. *See* 29 Am. Jur.2d *Evidence* § 788 at n. 14 (1967); Annot., 9 A.L.R.2d 899, 910 (1950).

## IV

Defendant next complains that the trial court erred in failing to instruct the jury that intent and knowledge are necessary elements of the offense of delivery of a controlled substance, despite the absence of such words in the prohibiting statute, W.Va. Code, § 60A-4-401.[2] The statute provides that "(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." The State contends that intent is an element only of the crime of possession with intent to manufacture or deliver a controlled substance and is not an element of the crime of delivery of a controlled substance, the crime for which defendant was convicted.

The case of *Applegate v. State*, 301 So.2d 853 (Miss. 1974) is directly on point. There the defendant, charged with the delivery of a controlled substance under the Mississippi statute which is identical to ours, challenged his conviction on the ground that the State failed to prove knowledge and intent. We agree with that court's holding:

> It was an essential element of the offense with which Applegate was charged that he have knowledge that he was delivering a controlled substance and that he intended to deliver a controlled substance. Of course, this knowledge could be proved by direct or circumstantial evidence.... *Id.* at 855.

In this case, where the defendant is charged with delivery of a controlled substance, a felony carrying serious penal sanctions, *see Thomas v. State*, 522 P.2d 528 (Alas. 1974), the trial court should have instructed on

---

[2] The instruction complained of appears as follows:

"The Court instructs the jury that if they believe beyond all reasonable doubt from the evidence that the defendant, Jesse James Dunn, on the 11th day of October, 1974, delivered to William McCormick, Jr. for remuneration, a controlled substance, namely Lysergic Acid Diethylmide (LSD), then they must find the said defendant, Jesse James Dunn, guilty of a felony."

these essential elements of knowledge and intent. Such a holding is actually a necessary implication inherent in the statutory wording. "[D]elivery" is defined in W.Va. Code, § 60A-1-101(f) as "the actual, constructive, or attempted transfer from one person to another of a controlled substance...." Surely, only an "intentional" or "knowing" delivery of a controlled substance is prohibited by statute, although the statute fails to expressly require criminal intent.

We recently stated in *State v. Frisby*, ___ W. Va. ___, ___ S.E.2d ___ (1978), that "[A]ll common law crimes require a *mens rea*, and what a person intended is always a question for jury determination under all the facts and circumstances. There is no reason to treat a statutory case any differently." In that case we discussed how a jury could infer intent to deliver a controlled substance from possession of an obviously large quantity of a controlled substance. Prior to that, in *State v. Austin*, ___ W. Va. ___, 234 S.E.2d 657 (1977), we held that guilty knowledge is an element of the crime of contributing to the delinquency of a minor, irrespective of the statute's wording. Similarly, in *State v. Dudick*, ___ W. Va. ___, 213 S.E.2d 458 (1975) the offense of constructive possession of a controlled substance was deemed to require a proof of knowledge.

Therefore, the developing law in this area would indicate, as evidenced by the Mississippi and Alaska cases, that in order to convict one of a felony, the State must prove beyond reasonable doubt a guilty knowledge or intent. We hold prospectively that knowledge or intent must be proven by the State in order to convict for the delivery of a controlled substance.

V

The trial record shows that the undercover police officer who was the State's principal witness, Officer McCormick, used notes from a report and file he had made about the alleged drug transaction to refresh his recollection as he testified at the trial. Defense counsel on

cross-examination asked to see the notes "for possible impeachment," and the court refused this request.

This issue was exhaustively treated recently in *State v. Dudick*, ____ W. Va. ____, 213 S.E.2d 458 (1975). In that case, having a remarkable factual similarity to the case at bar, this Court set forth in syllabus point 1 this absolute rule:

> [A]fter a witness has testified from notes used to refresh his recollection, the defense is absolutely entitled to inspect the notes from which the witness testified and must be given a reasonable opportunity to prepare a cross-examination.

The *Dudick* case was decided more than three months before petitioner's trial and thus governed the trial court's ruling on this point. The defense had an absolute right to inspect the notes, and a denial of this absolute right warrants reversal in this case as it did in *State v. Cokeley*, ____ W. Va. ____, 226 S.E.2d 40 (1976).

For the reasons stated above, the judgment of the Circuit Court of Ohio County is reversed, and the case is remanded to the circuit court for a new trial.

*Reversed and remanded.*