STATE OF WEST VIRGINIA

*v.*

WILLIAM ELLSWORTH WAYNE

(No. 15205)

Decided March 26, 1982.

---

*Camilletti & Sacco* and *Paul C. Camilletti* for appellant.

*Chauncey H. Browning*, Attorney General, and *Silas B. Taylor*, Assistant Attorney General, for appellee.

MILLER, CHIEF JUSTICE:

The defendant, William Ellsworth Wayne, was convicted of first degree murder with a recommendation of mercy in the Circuit Court of Marshall County. His principal claim of error is that the court misapplied the felony-murder rule because the underlying felony of robbery had been completed prior to the murder. The State's theory of the case was that the defendant was among the initial group of four or five inmates who engineered the escape and during the course of the escape these inmates committed three robberies with the homicide occurring during the third robbery.

On November 7, 1979, fifteen inmates, including the defendant, escaped from the West Virginia State Penitentiary at Moundsville. Prior to the escape, the prisoners gathered in a hallway outside the "Control Center" which is a two-room area with a "command post" and a "control cage." Both of these stations are manned by a guard. There is a locked door between the first and second room and the outside exit is controlled by the guard in the "control cage."

The prisoners first accosted Sergeant Jerry Daff, the guard on duty at the "command post," with a knife

forcing him to unlock, or produce keys for unlocking the door between the two rooms. The prisoners then overpowered Officer John Villers at the "control cage," took his hand gun, activated the electronic door openers, and exited the prison.

Once outside the penitentiary, the inmates stopped a passing automobile owned and operated by off-duty State Policeman Phillip S. Kesner. The prisoners pulled Officer Kesner out of the vehicle and shot him in the chest inflicting a fatal wound. His wife, who was a passenger in the automobile, was pushed onto the street. The automobile was then used for an escape by some of the prisoners while the defendant and another fled on foot.

The defendant's involvement in the robbery according to the State's witnesses and his written statement introduced at trial was that he was the fourth or fifth person to exit the prison and was among the active participants who accosted both guards and forced the surrender of the key and firearm. The defendant does not appear to dispute the evidence of the two initial robberies. Certainly, these acts of removing property of value unlawfully from the person of another by force with intent to steal the same constitutes aggravated robbery or robbery by violence under W. Va. Code, 61-2-12. *State v. Harless*, ___ W. Va. ___, 285 S.E.2d 461 (1981). The fact that the defendant was aiding and abetting the others makes him a principal in the second degree. *State ex rel. Brown v. Thompson*, 149 W. Va. 649, 142 S.E.2d 711 (1965), *cert. denied, Brown v. Thompson*, 382 U.S. 940, 15 L.Ed.2d 350, 86 S.Ct. 392; *State v. Franklin*, 139 W. Va. 43, 79 S.E.2d 692 (1953).

The defendant's primary contention is that the first two robberies had been terminated at the time the murder was committed on the street in front of the penitentiary. Furthermore, the defendant argues that he was not part of the group that surrounded the car and killed Kesner and, therefore, he could not be connected with either the robbery of the car or the homicide. Thus, the felony-murder rule is not applicable in his case. His involvement at the car is however a matter of factual dispute which

the jury resolved against the defendant. The deceased officer's wife testified that she could not identify the members of the group that approached the car and killed her husband but estimated there were seven to ten escapees crowded around the car. She also stated that after the shooting some of them ran away from the car while others got in the car and drove off.

The defendant did not testify but his companion Wesley Scott who fled with him testified that he and the defendant were in the front of the escaping group. Scott had given several conflicting statements to the police. He denied that he and the defendant were near the car but he did admit that he offered to testify that he saw one of the other inmates, Jack Hart, pull Kesner out of the car and shoot him.

The trial court did not err, as the defendant urges, by permitting the jury to consider the two robberies that occurred inside the penitentiary to invoke the felony-murder rule.

We have not had occasion to discuss the temporal scope of our felony-murder rule. In *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978), we examined at some length our felony-murder rule and recognized in Syllabus Point 4 that:

> "W. Va. Code, 61-2-1, alters the scope of the common law felony-murder rule by confining its application to the crimes of arson, rape, robbery or burglary, or the attempt to commit such crimes."

We acknowledged in *Sims* that we had consistently interpreted our

> "statutory felony-murder rule so as not to require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs during the commission of, or the attempt to commit, one of the enumerated felonies." *Sims* at 841 (citations omitted).

We also said in *Sims*, that a felony-murder conviction could be obtained even though "the homicide occurs

accidently during the commission of or the attempt to commit, one of the enumerated felonies." Syllabus Point 7, in part, *State v. Sims, supra.* We applied these same rules to sustain the conviction of an accessory-before-the-fact in *State v. Grimmer,* 162 W. Va. 588, 251 S.E.2d 780 (1979).

In *State v. Dawson,* 129 W. Va. 279, 40 S.E.2d 306 (1946), we indicated that the defendant could be convicted of felony-murder where the victim in the course of being robbery was struck on the head and died ten days later. There was no elaborate discussion or citation of authority for this point.

Many jurisdictions follow the rule that a felony-murder exists if the homicide occurs within the *res gestae* of the felony. The Supreme Court of Virginia has defined what constitutes the *res gestae* in *Haskell v. Commonwealth,* 218 Va. 1033, 1041, 243 S.E.2d 477, 482 (1978), which we adopt as our rule:

> "Thus, the felony-murder statute applies where the initial felony and the homicide were parts of one continuous transaction, and were closely related in point of time, place, and causal connection, as where the killing was done in flight from the scene of the crime to prevent detection or promote escape."

In *Haskell, supra,* four individuals decided to rob a drunken sailor who was hitchhiking. After the victim got into the car he fell asleep and the defendants drove him to a secluded area where they woke him, asked him to get out of the car and attacked him. The defendants could not find the victim's wallet. As they started to drive away, the victim tried to re-enter the car. He was then shot. The defendants' convictions under the felony-murder rule were affirmed.

In *State v. Squire,* 292 N.C. 494, 234 S.E.2d 563 (1977), a car containing bank robbers was stopped by a state policeman for a traffic violation some ten miles from the scene of the robbery and as the state policeman ap-

proached the car he was killed. The court affirmed the application of the felony-murder rule. The same result was obtained in *People v. Salas*, 7 Cal.3d 812, 823-24, 103 Cal. Rptr. 431, 439, 500 P.2d 7, 15, 58 A.L.R.3d 832, 843 (1972), *cert. denied, Salas v. California*, 410 U.S. 939, 93 S.Ct. 1401, 35 L.Ed.2d 605 (1973), where the court stated:

> "Thus the robbery was still in the escape stage, as conceded by defendant at trial. Defendant testified not only that he was caught while attempting to escape with the loot, but also that he did not know whether he would split the loot with Damion as they had had no opportunity to make that determination.

> "Under the circumstances here present and even if the killing were accidental or unintentional as contended by defendant, it occurred while the robbery continued in progress and constituted first degree murder under the felony-murder rule."

*See also Bizup v. People*, 150 Colo. 214, 371 P.2d 786 (1962), *cert. denied, Bizup v. Colorado*, 371 U.S. 873, 9 L.Ed.2d 112, 83 S.Ct. 144; *Commonwealth v. Dellelo*, 349 Mass. 525, 209 N.E.2d 303 (1965); *State v. Adams*, 339 Mo. 926, 98 S.W.2d 632, 108 A.L.R. 838 (1936); *State v. Artis*, 57 N.J. 24, 269 A.2d 1 (1970); Annot., 58 A.L.R.3d 851 (1974).

Under the foregoing law, we conclude that the trial court did not err in its instruction regarding our felony-murder rule and we, therefore, affirm its judgment.

*Affirmed.*