490 S.E.2d 724

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Gary "Mo" WADE, Defendant Below, Appellant.**

No. 23559.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1997.

Decided July 11, 1997.

John Preston Bailey, Bailey, Riley, Buch & Harman, L.C., Thomas E. Johnston, Flaherty, Sensabaugh & Bonasso, Wheeling, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Victor S. Woods, Assistant Attorney General, Charleston, for Appellee.

DAVIS, Justice:

Gary "Mo" Wade, appellant and defendant below, appeals his conviction of first-degree felony-murder with mercy, entered in the Circuit Court of Ohio County. Wade contends that the circuit court erred in refusing to instruct the jury regarding self-defense, provocation, and certain lesser included offenses. In addition, Wade maintains that there was insufficient evidence upon which to convict him of felony-murder. Finally, Wade argues that the trial court erred in allowing the testimony of the victim's father, and in refusing to excuse, for cause, two jurors. We find that the court committed no prejudicial error.

## I.

## FACTS

At approximately 4:30 p.m. on April 23, 1994, the defendant, Gary "Mo" Wade (hereinafter "Wade"), was picked up by his long-time friend Stefon Stradwick (hereinafter "Stradwick"). Stradwick was driving his Cadillac automobile. When Wade entered the car, he showed a gun to Stradwick. Wade explained that he was carrying it to protect himself from retaliation for an incident that had occurred a few days earlier.[1]

The two young men [2] traveled to a friend's house where they consumed drugs and alcohol. The drugs were provided by Stradwick, an admitted drug dealer. Thereafter, Wade and Stradwick drove around in the Cadillac for some period of time. Both young men continued to consume alcohol and drugs that were provided free of charge to Wade by Stradwick. They eventually went to the corner of 15th and Wood Streets in East Wheeling, West Virginia, and joined a group of approximately six friends. This corner was a spot where young men regularly gathered to socialize. It was also where Stradwick frequently conducted sales of crack cocaine.[3] On the evening in question, and in the presence of this group, Stradwick personally conducted two such sales. Although the others did not participate in the sales, the testimony presented at trial indicated that all of them, including Wade, were aware that Stradwick was selling crack cocaine. Two of the men questioned Stradwick about each sale when he returned to the group. Wade was present during these conversations; however, he did not participate in the discussions.

Thereafter, a red pickup truck circled the block and pulled up next to the group of young men. The driver, York Rankin (hereinafter "Rankin"),[4] indicated that he wanted to buy some crack cocaine. Stradwick and the others failed to respond because they did not know Rankin. Rankin pulled forward ten or fifteen feet and stopped. Sean Mosley (hereinafter "Mosley"), a homeless drug addict who had joined the group, then indicated that he knew the driver by going over and speaking to him. When Mosley returned, he told Stradwick that Rankin wanted to purchase fifty dollars worth of crack cocaine. Stradwick gave Mosley the cocaine and instructed him to return with the fifty dollars. Mosley proceeded to Rankin's truck with the crack cocaine, but "pinched" off a portion of it for himself. Rankin, who was sitting in the truck with his wallet on his lap, rejected the cocaine. Mosley then threw the crack cocaine into the truck, grabbed Rankin's wallet and ran back toward the group of young men. As he ran, he yelled "who got a gun?" When he reached the group he took money from the wallet, threw the wallet down near the group, gave some money to Stradwick [5] and continued to run.

1. A few days prior to the incident herein addressed, Wade was involved in a conflict where guns were fired by Wade and at least one other individual. During the dispute, Wade apparently shot one of his adversaries in the foot, and subsequently received threats of revenge.

2. Wade was apparently in his early twenties and Stradwick was nineteen years old.

3. Stradwick sold crack cocaine only to individuals that he or someone else in the group knew. Potential customers would pull up to the corner in their automobiles. If Stradwick knew them, he would approach the car and transact a sale. If he did not know the person(s) in the car, he would not approach the car.

4. Rankin was driving his father's truck.

5. According to Stradwick, Mosley did not give him any money until after the shooting when Stradwick, Mosley and others ran behind a nearby school.

Rankin got out of the truck and chased Mosley toward the group. As he ran, he yelled "I'm going to kill you n___s." When Rankin reached the group he bent over to pick up his wallet and was kicked in the head by Andre Smith, a member of the group. Apparently, Rankin then noticed that his truck was coasting forward. He grabbed his wallet and ran back to the truck. According to the testimony, Rankin drove forward a short distance, stopped and bent over as if he was looking for something in the glove box or under the seat, and then began backing the truck rapidly in the direction of the group. Rankin turned the truck so that its rear end was moving toward Stradwick's Cadillac. Stradwick testified that he did not believe Rankin was attempting to hit any of the individuals gathered on the corner, but he did fear Rankin was going to hit the Cadillac. Wade and two others testified that they thought Rankin was going to try to harm them.

Rankin stopped the truck when he was approximately five feet away from the Cadillac. Wade had pulled out his pistol and aimed it at the truck. After Wade drew his weapon, Stradwick twice yelled "smoke the motherf___." Rankin then began to pull forward, away from the group.[6] As Rankin pulled away, and after Stradwick yelled, Wade fired three shots into the back of the truck. The truck coasted forward and came to a stop on the sidewalk outside the Keg–Und–Kraut restaurant. One of the bullets struck the right side of the pick-up truck bed near the top, one lodged in the passenger door frame, and one entered the back of the cab, passed through the seat and lodged in Rankin's chest, piercing his aorta and causing his death shortly thereafter.

Wade and another member of the group, R.J. Saunders, ran to Saunders' sister's house and hid the gun. Stradwick and several others, including Mosley, ran behind a nearby school. A short time later, Stradwick and the others who had run behind the school returned to the scene and discovered Rankin had died. Later that night Stradwick, Wade and others met at a bar and agreed that, if they were questioned about the shooting, they would claim that Rankin had tried to run them down. They also agreed not to tell anyone what had happened.

Approximately ten days later, Stradwick and Wade retrieved the gun from its second hiding place in Bridgeport, Ohio, and threw it off Wheeling Island into the Ohio River. The gun was never retrieved.

■ . Ultimately, Stradwick and Wade were jointly charged with felony-murder in a one-count indictment dated January 9, 1995. The underlying felony was the delivery of a controlled substance. Wade filed a motion to sever the trials, which was granted by the trial court. Shortly before Wade's trial began, Stradwick pleaded guilty to second-degree murder under a plea agreement requiring him to testify as the State's witness at Wade's trial. At the conclusion of the trial, Wade was found guilty of first-degree felony-murder.[7] He was sentenced to life with mercy. Wade's subsequent motion for judgment of acquittal or, in the alternative, a new trial, was denied by the court. It is from the verdict order of the Circuit Court of Ohio County, filed January 16, 1996, that Wade now appeals. He asserts that the circuit court erred in refusing to give the jury certain instructions concerning the defense of self-defense, provocation, and certain lesser included offenses; in entering a conviction that was based upon insufficient evidence; in allowing the testimony of the victim's father;

---

**6.** At some point, the tires of the truck squealed; however, there is conflicting testimony as to whether the tires squealed as the truck was backing up, or as it was pulling away.

**7.** The West Virginia felony-murder rule is found in W. Va.Code § 61–2–1 (1991) (Repl.Vol.1992), and states, in part:

> Murder ... in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or *delivering a controlled substance* as defined in article four [§ 60A–4–401 et seq.], chapter sixty-a of this code, is murder of the first degree....

(Emphasis added). The offense of manufacturing or delivering a controlled substance was included as one of the enumerated felonies that may form the basis of a felony-murder charge when W. Va.Code § 61–2–1 was amended in 1991.

and in refusing to excuse, for cause, two jurors. We will discuss these alleged errors in turn.[8]

## II.

### SELF–DEFENSE AND PROVOCATION AS DEFENSES TO FELONY–MURDER

At trial, Wade offered both a self-defense instruction and a provocation instruction. Denying these instructions, the trial judge ruled that such defenses are not available under a charge of felony-murder. Wade asserts there is a national split of authority with regard to the availability of self-defense as a defense to felony-murder. He contends that the states prohibiting these defenses reason that the commission of a violent felony clearly makes the defendant the initial aggressor. However, Wade submits that this reasoning does not warrant the denial of the self-defense and provocation instructions he offered because he was not the initial aggressor.

The State responds that a self-defense instruction is unavailable in a felony-murder case. In this manner, the State notes that the trial court justified rejecting Wade's self-defense and provocation instructions by noting that when the Legislature added "delivery of a controlled substance" to the list of enumerated felonies predicating a charge of felony-murder, it did not provide for consideration of mitigating circumstances. The State agrees that West Virginia has not yet decided this issue, but asserts that a majority of states addressing this issue have held that self-defense instructions are not available in a felony-murder case.

■ The question we are asked to address is whether instructions on self-defense or provocation are permitted, as a matter of law, in response to a charge of felony-murder. "Whether an instruction is legally correct is a question of law and our review is *de novo*. *State v. Guthrie*, 194 W.Va. 657, 671 n. 12, 461 S.E.2d 163, 177 n. 12 (1995)." *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 466, 475 S.E.2d 555, 558 (1996).

**8.** Wade also argues that the West Virginia felony-murder statute should be interpreted to require that the defendant killed with malice. He maintains that if the felony-murder statute is not so interpreted, it is unconstitutional because it provides for a severe penalty without requiring proof of *mens rea*. As Wade concedes, in *State v. Sims* we previously considered and rejected the same argument he now raises. The *Sims* Court held, "[t]he crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies." Syl. pt. 7, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978). Subsequent to *Sims*, we have repeated this principle on many occasions. *See State v. Hottle*, 197 W.Va. 529, 539, 476 S.E.2d 200, 210 (1996) (per curiam); Syl. pt. 1, *State ex rel. Painter v. Zakaib*, 186 W.Va. 82, 411 S.E.2d 25 (1991); *State v. Julius*, 185 W.Va. 422, 433, 408 S.E.2d 1, 12 (1991); *State v. Ruggles*, 183 W.Va. 58, 62, 394 S.E.2d 42, 46 (1990); *State v. Mayle*, 178 W.Va. 26, 31, 357 S.E.2d 219, 224 (1987); Syl. pt. 5, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986); Syl. pt. 3, *State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162, 342 S.E.2d 127 (1986); Syl. pt. 14, *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147 (1985); *State v. Williams*, 172 W.Va. 295, 311, 305 S.E.2d 251, 267 (1983); *State v. Wayne*, 169 W.Va. 785, 788, 289 S.E.2d 480, 482 (1982); *State v. Hatfield*, 169 W.Va. 191, 198 n. 2, 286 S.E.2d 402, 408 n. 2 (1982); *State v. Taylor*, 168 W.Va. 380, 384, 285 S.E.2d 635, 637 (1981); Syl. pt. 8, *State v. Grimmer*, 162 W.Va. 588, 251 S.E.2d 780 (1979), *overruled on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980). Moreover, we have repeatedly affirmed the constitutionality of our felony-murder rule. *See State v. Julius*, 185 W.Va. 422, 434 n. 17, 408 S.E.2d 1, 13 n. 17 (1991); *State v. Cook*, 175 W.Va. 185, 198, 332 S.E.2d 147, 160 (1985); *State v. Taylor*, 168 W.Va. 380, 384, 285 S.E.2d 635, 637 (1981); *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 316–17, 233 S.E.2d 425, 426–27 (1977). Wade argues, however, that this issue should be reconsidered in light of the United States Supreme Court's holdings in *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), and *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). We are unpersuaded by this authority, and we decline to revisit an issue that has been so thoroughly addressed. Our felony-murder rule does not require malice or the intent to kill, even when the predicate felony is the delivery of a controlled substance. The only intent that must be shown to support such a claim is the *intentional* or *knowing* delivery of a controlled substance. *See* Syl. pt. 3, in part, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978) (holding "[o]nly an 'intentional' or 'knowing' delivery of a controlled substance is prohibited by statute"). *Accord State v. Nicastro*, 181 W.Va. 556, 561, 383 S.E.2d 521, 526 (1989).

■ We have explained, with regard to felony-murder, that:

"[T]he elements which the State is required to prove to obtain a conviction of felony-murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt." *State v. Williams,* 172 W.Va. 295, 311, 305 S.E.2d 251, 267 (1983).

Syl. pt. 5, *State v. Mayle,* 178 W.Va. 26, 357 S.E.2d 219 (1987). Thus, to obtain a conviction of felony-murder, the particular offense that must be established is the felony predicating the felony-murder charge. Consequently, any claim of self defense in response to a charge of felony-murder must be asserted with regard to the predicate felony.

In the case *sub judice,* the charge of felony-murder was based upon the felony offense of the delivery of a controlled substance in violation of W. Va.Code § 60A–4–401(a) (1983) (Repl.Vol.1992). W. Va.Code § 60A–4–401(a) states, in relevant part, "[e]xcept as authorized by this chapter, it is unlawful for any person to ... deliver, or possess with intent to ... deliver, a controlled substance." The term "deliver" is defined as "the actual, constructive, or attempted transfer from one person to another of (1) a controlled substance, whether or not there is an agency relationship...." W. Va.Code § 60A–1–101(g) (1983) (Repl.Vol.1992). Moreover, we have held that "[o]nly an 'intentional' or 'knowing' delivery of a controlled substance is prohibited by statute." Syl. pt. 3, in part, *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978). *Accord State v. Nicastro,* 181 W.Va. 556, 561, 383 S.E.2d 521, 526 (1989).

■ We now consider the applicability of the self defense and provocation theories asserted by Wade to the offense of "delivery

of a controlled substance." Self defense is typically applied in cases of homicide or assault. It is generally stated that:

"[A] defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant has the right to employ deadly force in order to defend himself." *State v. W.J.B.,* 166 W.Va. 602, 606, 276 S.E.2d 550, 553 (1981).

*State v. Hughes,* 197 W.Va. 518, 524, 476 S.E.2d 189, 195 (1996). *See also* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law,* § 5.7, at 649 (1986). Similarly, provocation is used to reduce a murder charge to voluntary manslaughter by negating the element of malice where the killing was committed in the heat of passion. *State v. Kirtley,* 162 W.Va. 249, 253–54, 252 S.E.2d 374, 376–77 (1979). In light of these traditional applications of self defense and provocation, we can conceive of no circumstances where the offense of "delivery of a controlled substance," standing alone, would yield to a claim of self-defense or provocation. Consequently, we hold that self-defense and provocation instructions are not available in response to a charge of felony-murder where the predicate felony is the delivery of a controlled substance. Necessarily, we find that the circuit court properly denied Wade's request for such instructions during the proceedings below.

### III.

### LESSER INCLUDED OFFENSES

Wade argues that the trial judge erred in refusing to instruct the jury on second-degree murder, voluntary manslaughter, and involuntary manslaughter as lesser included offenses of felony-murder.[9] The State re-

---

9. Wage argues further that lesser included offense instructions are particularly appropriate in a case such as this where there were genuine issues as to whether the defendant participated in the underlying felony, whether the shooting was related to the commission of the felony and whether the defendant was provoked. We explained in Section II of this opinion that provo-

cation is not available in response to a charge of felony-murder where the predicate felony is "delivery of a controlled substance." With regard to Wade's other contentions, we note that reasonable doubt with respect to a defendant's participation in the underlying felony or to the connection between the killing and the predicate felony, requires that a jury find the defendant not guilty

sponds that second-degree murder, voluntary manslaughter and involuntary manslaughter are not lesser included offenses of felony-murder.

We have set forth the following standard for reviewing a trial court's refusal to give requested jury instructions:

A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. pt. 11, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). "Whether an instruction is legally correct is a question of law and our review is *de novo.* *State v. Guthrie,* 194 W.Va. 657, 671 n. 12, 461 S.E.2d 163, 177 n. 12 (1995)." *B.F. Specialty Co. v. Charles M. Sledd Co.,* 197 W.Va. 463, 466, 475 S.E.2d 555, 558 (1996). We first consider whether the requested instructions appropriately reflected the law.

To determine whether the instructions correctly state the law, we must determine whether second-degree murder, voluntary manslaughter and involuntary manslaughter are lesser included offenses of felony-murder.

"The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syl. pt. 1, *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981).

Syl. pt. 3, *State v. Hays,* 185 W.Va. 664, 408 S.E.2d 614 (1991). We have previously explained that:

"[T]he elements which the State is required to prove to obtain a conviction of

felony-murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt." *State v. Williams,* 172 W.Va. 295, 311, 305 S.E.2d 251, 267 (1983).

Syl. pt. 5, *State v. Mayle,* 178 W.Va. 26, 357 S.E.2d 219 (1987). We find that both second-degree murder and voluntary manslaughter are not lesser included offenses of felony-murder because they each require an element that is not necessary for a conviction of felony-murder:

" 'Malice, express or implied, is an essential element of murder in the [first or] second degree, and if [it is] absent the [offense] is of no higher grade than voluntary manslaughter.' Syllabus Point [2], *State v. Galford,* 87 W.Va. 358, 105 S.E. 237 (1920)." Syllabus Point 2 of *State v. Clayton,* 166 W.Va. 782, 277 S.E.2d 619 (1981) [ (per curiam) ].

Syl. pt. 1, *State v. Bongalis,* 180 W.Va. 584, 378 S.E.2d 449 (1989). As we have repeatedly explained, malice is not an element of felony-murder.[10] Hence, second-degree murder, which requires malice, cannot be a lesser included offense of felony-murder.

We have also explained with regard to voluntary manslaughter that:

It is fundamental in this jurisdiction that voluntary manslaughter requires an intent to kill. *State v. Hamrick,* [160] W.Va. [673], 236 S.E.2d 247 (1977); *State v. Blizzard,* 152 W.Va. 810, 166 S.E.2d 560 (196[9] ); *State v. Duvall,* 152 W.Va. 162, 160 S.E.2d 155 (1968); *State v. Reppert,* 132 W.Va. 675, 52 S.E.2d 820 (1949); *State v. Foley,* 131 W.Va. 326, 47 S.E.2d 40 (1948); and *State v. Barker,* 128 W.Va. 744, 38 S.E.2d 346 (1946).

*State v. Wright,* 162 W.Va. 332, 334, 249 S.E.2d 519, 521 (1978). Because felony-murder requires the intent to commit the predi-

---

of felony-murder. Wade also urges us to look to the law of other jurisdictions that have permitted instructions on lesser included offenses in cases of felony-murder. We decline to do so.

**10.** *See supra* note 7.

cate felony, rather than the intent to commit the homicide resulting therefrom, voluntary manslaughter is not a lesser included offense to felony-murder.

■■■ Involuntary manslaughter is committed when " ' "a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act, unlawfully causes the death of another." ' [*State v. Hose*, 187 W.Va. 429], 432, 419 S.E.2d [690], 693 [ (1992) ] (quoting Syl. Pt. 7, *State v. Barker*, 128 W.Va. 744, 38 S.E.2d 346 (1946)); *accord State v. Vollmer*, 163 W.Va. 711, 712, 259 S.E.2d 837, 839 (1979)." *State v. Hughes*, 197 W.Va. 518, 523, 476 S.E.2d 189, 194 (1996). However, we previously indicated that involuntary manslaughter is not a lesser included offense to felony-murder in *State v. Humphrey*, 177 W.Va. 264, 270, 351 S.E.2d 613, 619 (1986), when we stated that "the fact that the defendant claimed he accidentally discharged the shotgun would not remove the case from the felony-murder rule and his instruction on involuntary manslaughter was correctly rejected."

Moreover, we perceive that a difference between felony-murder and involuntary manslaughter is found in the degree of the unlawful act in which the defendant is engaged at the time of the killing. If the unlawful act is one of the felonies enumerated in W. Va. Code § 61–2–1 (1991) (Repl.Vol.1992), then the defendant would be guilty of felony-murder. If, on the other hand, the defendant is engaged in an unlawful act other than those designated as predicates to felony-murder, then he or she would be guilty of involuntary manslaughter, so long as the killing was unintentional.[11] Thus, we conclude that involuntary manslaughter is not a lesser included offense of felony-murder.

For the foregoing reasons, we hold that, as a matter of law, second-degree murder, voluntary manslaughter, and involuntary manslaughter are not lesser included offenses of felony-murder. Because these offenses are not lesser included offenses of felony-murder,

the trial court did not err in refusing Wade's proposed instructions.

## IV.

## SUFFICIENCY OF THE EVIDENCE

Wade argues that the State presented insufficient evidence to support a conviction of first-degree felony-murder because the State failed to establish that Wade was involved in the distribution of a controlled substance to Rankin. Wade further contends that the only action on his part that tends to connect him to the drug transaction is the fact that he fired the shots, apparently at the command of Stradwick. Wade submits that the evidence presented at trial clearly indicated that Stradwick gave the command because he thought Rankin was going to damage his Cadillac, and not as part of the drug transaction. Moreover, Wade testified that he fired the shots in self defense. Wade argues next that the State's theory that he participated in the underlying felony by aiding Stradwick in collecting the money from the drug deal fails because the passing of money or other consideration is not an element of distribution of a controlled substance. *See State v. Ashworth*, 170 W.Va. 205, 211, 292 S.E.2d 615, 621 (1982) ("Nor does the culpability of the person who delivers the controlled substance depend upon whether that person received compensation, pecuniary or otherwise, from the transaction.") Finally, Wade asserts that there is a bootstrapping aspect to the State's argument that Wade committed murder because he participated in the distribution of a controlled substance, and he participated in the distribution of a controlled substance because he committed murder.

The State responds that it met its burden of proving that Wade participated in the underlying drug deal as a principal in the second degree, and that he facilitated the drug deals by providing protection to the other members of the group in the event that a drug deal would "go bad." The State argues further that "[t]he felony-murder statute applies where the initial felony and

---

11. Furthermore, inasmuch as involuntary manslaughter requires that one engaged in an unlawful act *unintentionally* cause the death of another, in the instance case, there were no facts to

the homicide are parts of one continuous transaction, and are closely related in point of time, place, and causal connection...." Syl. pt. 2, in part, *State v. Wayne*, 169 W.Va. 785, 289 S.E.2d 480 (1982). Moreover, the State asserts that presence at the scene of a crime may impart culpability to a bystander if he/she watches the unlawful activity occur with approval and shared intent, or if his/her seeming passivity operates as an encouragement to, or serves to protect, the perpetrator. Finally, the State argues that the question of whether Wade participated in the underlying felony was a question of fact that the jury, upon proper instruction, decided in favor of the State.

Our authority to review the sufficiency of the evidence supporting a jury's verdict is limited. The "standard is a strict one; a defendant must meet a heavy burden to gain reversal because a jury verdict will not be overturned lightly." *Guthrie*, 194 W.Va. at 667–668, 461 S.E.2d at 173–74. In Syllabus point 1 of *Guthrie*, we adopted a new standard for determining when a verdict may be overturned due to insufficient evidence:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

We elaborated on this deferential standard by holding further:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with ev-

ery conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *Guthrie*. We apply the same standard regardless of whether the evidence is direct or circumstantial. *Id.* at 668, 461 S.E.2d at 174.

To determine whether the evidence was sufficient to support Wade's conviction in this case, we first ascertain the elements of the offense underlying the charge of felony-murder. We then consider the evidence submitted at trial, viewed in the light most favorable to the prosecution, to determine whether a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt.

▮ The offense underlying the charge of felony-murder in the case *sub judice*, delivery of a controlled substance, is defined in W. Va.Code § 60A–4–401(a) (1983) (Repl.Vol. 1992), which states, in relevant part, "[e]xcept as authorized by this chapter, it is unlawful for any person to ... deliver, or possess with intent to ... deliver, a controlled substance." The term "deliver" is defined as "the actual, constructive, or attempted transfer from one person to another of (1) a controlled substance, whether or not there is an agency relationship...." W. Va.Code § 60A–1–101(g) (1983) (Repl.Vol.1992). Moreover, we have held that "[o]nly an 'intentional' or 'knowing' delivery of a controlled substance is prohibited by statute." Syl. pt. 3, in part, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978). *Accord State v. Nicastro*, 181 W.Va. 556, 561, 383 S.E.2d 521, 526 (1989). In this case, however, the State proceeded against Wade on the theory that he was guilty of the delivery of a controlled substance as a principal in the second degree.[12] We have explained that:

support such an instruction, if it had been appropriate.

12. Pursuant to W. Va.Code § 61–11–6 (1923) (Repl.Vol.1992), "[i]n the case of every felony,

"A person who is the absolute perpetrator of a crime is a principal in the first degree, and. a person who is present, aiding and abetting the fact to be done, is a principal in the second degree." Syllabus point 5, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).

Syl. pt. 3, *State v. Mullins*, 193 W.Va. 315, 456 S.E.2d 42 (1995).

In this State it is well established that a principal in the second degree need not him or herself perpetrate the actual offense; however, guilt requires more than the mere presence of the defendant:

"' "Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; *or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator.*" Syllabus, *State v. Patterson*, 109 W.Va. 588, [155 S.E. 661] [1930].' Syllabus Point 3, *State v. Haines*, 156 W.Va. 281, 192 S.E.2d 879 (1972)." Syl. Pt. 9, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).

Syl. Pt. 3, *State v. Kirkland*, 191 W.Va. 586, 447 S.E.2d 278 (1994) (emphasis added). *Accord State v. Mayo*, 191 W.Va. 79, 82, 443 S.E.2d 236, 239 (1994) (noting that " 'mere presence at the scene of the crime, even with knowledge of the criminal purpose of the principal in the first degree, is not, alone, sufficient to make the accused guilty as a principal in the second degree' " (quoting *State v. Fortner*, 182 W.Va. 345, 356, 387 S.E.2d 812, 823 (1989))). We note, however, that the presence of the defendant, when considered along with certain other circumstances, *does impact upon the determination of the defendant's connection, if any, to the* offense:

every principal in the second degree ... shall be punishable as if he were the principal in the first degree...." *Accord* Syl. pt. 2, *State v. Mullins*, 193 W.Va. 315, 456 S.E.2d 42 (1995) (" ' "Where a defendant is convicted of a particular substantive offense, the test of the sufficiency of the evidence to support the conviction necessarily involves consideration of the traditional distinctions between parties to offenses. Thus, a person

"Proof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime." Syl. Pt. 10, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).

Syl. pt. 4, *Kirkland*, 191 W.Va. 586, 447 S.E.2d 278. Action on the part of the defendant is also indicative of his relationship to the venture, even if his or her participation is not a substantial part of the criminal act. "An act of relatively slight importance may render the defendant criminally liable as a participant in the offense." *State v. Fortner*, 182 W.Va. 345, 357, 387 S.E.2d 812, 823 (1989) (citations omitted). Furthermore, "[u]nder the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator." Syl. pt. 11, *Id.* The *Fortner* Court explained:

"It is not, therefore, necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."

*Id.* at 358, 387 S.E.2d at 825 (citation omitted).

We have summarized the level of participation necessary to support a conviction as a principal in the second degree as follows:

may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principal in the second degree, or as a principal in the first degree in the commission of such offense." Syl. Pt. 8, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).' Syllabus point 2, *State v. Kirkland*, 191 W.Va. 586, 447 S.E.2d 278 (1994).").

"[t]o be convicted as an aider and abettor, the law requires that the accused 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938), *quoted with approval in Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919, 925 (1949), and *State v. Harper*, [179] W.Va. [24], [28], 365 S.E.2d 69, 73 (1987). The State must demonstrate that the defendant 'shared the criminal intent of the principal in the first degree.' *State v. Harper*, [179] W.Va. at [29], 365 S.E.2d at 74. (Citations omitted). In this regard, the accused is not required to have intended the particular crime committed by the perpetrator, but only to have knowingly intended to assist, encourage, or facilitate the design of the criminal actor. [ (Citation omitted).] The intent requirement is relaxed somewhat where the defendant's physical participation in the criminal undertaking is substantial. [ (Citations omitted).]"

*Kirkland* at 592, 447 S.E.2d at 284 (quoting *Fortner* at 356, 387 S.E.2d at 823 (some citations omitted)).

■ Having established the principles relevant to the offense of the delivery of a controlled substance and the status of a principal in the second degree, we turn to the facts of this case. We must first establish that the underlying offense was committed and that there was a principal in the first degree. *See State v. Lola Mae C.*, 185 W.Va. 452, 458, 408 S.E.2d 31, 37 (1991) (explaining that " ' "in order that one may be a principal in the second degree ... the general rule is that it is essential that there be a crime committed and a principal in the first degree...." ' " (citations omitted)). Both Stradwick and Mosley described the transaction that took place between them and Rankin. It was undisputed that after Rankin indicated his interest in purchasing drugs, Mosley approached Rankin's vehicle, conversed with Rankin briefly, and returned to the group to inform Stradwick that Rankin wanted a certain amount of crack cocaine. Stradwick then provided Mosley with the requested drugs and Mosley returned to

Rankin's truck where he subsequently threw the crack into the vehicle and snatched Rankin's wallet from his lap. Based upon these facts, we believe that the jury could reasonably conclude, beyond a reasonable doubt, that Stradwick and Mosley perpetrated the crime of delivery of a controlled substance.

We must now determine whether the evidence establishes, beyond a reasonable doubt, that Wade participated as a principle in the second degree. We believe that it does. While there was no direct evidence connecting Wade to the offense, we believe there was sufficient circumstantial evidence from which the jury could reasonably conclude that such a connection existed. Viewed most favorably to the verdict, the evidence established that, on the day when the offense occurred, Stradwick picked up Wade in the afternoon. Throughout the day, Stradwick provided Wade with drugs. Stradwick and Wade arrived together at the location where the shooting ultimately occurred, and Wade's transportation was provided by Stradwick. Wade testified that he knew Stradwick was a drug dealer and that he conducted his drug sales primarily from that location. Although Wade denied that the purpose for being at that location was so that Stradwick could conduct drug sales, Wade admitted that he had before observed Stradwick dealing drugs from that spot. The evidence also established that Stradwick knew Wade was carrying a gun, and that Stradwick conducted two drug transactions in Wade's presence prior to Rankin's arrival. Finally, the evidence established that Wade fired three shots at Rankin in response to Stradwick's order to do so. We think these facts provide sufficient evidence from which the jury could conclude beyond a reasonable doubt that Wade's presence "was designed by him and operated as an encouragement to or protection of the perpetrator," Syl. Pt. 3, in part, *Kirkland*, and that Wade " 'associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed,' " and that he " 'shared the criminal intent of the principal in the first degree,' " *Id.* at 592, 447 S.E.2d at 284, (citations omitted).

Finally, we must determine whether Rankin's death resulted from injuries received during the course of the predicate felony. We have previously established:

> "[T]he elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt."
> State v. Williams, 172 W.Va. 295, [311], 305 S.E.2d 251, 267 (1983).

Syl. pt. 5, State v. Mayle, 178 W.Va. 26, 357 S.E.2d 219 (1987).

In addition, this Court concluded in Syllabus point 2 of State v. Wayne, "[t]he felony-murder statute applies where the initial felony and the homicide are parts of one continuous transaction, and are closely related in point of time, place, and causal connection, as where the killing is done in flight from the scene of the crime to prevent detection or promote escape." 169 W.Va. 785, 289 S.E.2d 480 (1982). In Wayne, fifteen inmates committed two robberies inside a prison while escaping from that prison. Once they got outside, they killed the driver of an automobile that several of them used to escape. The defendant did not escape in the automobile, but fled on foot. On appeal, this Court found that the lower court "did not err . . . by permitting the jury to consider the two robberies that occurred inside the penitentiary to invoke the felony-murder rule." Wayne at 788, 289 S.E.2d at 482. In the present case, where the violent conflict arose from a disputed drug transaction, and where Wade fired at the command of Stradwick, the drug dealer, we find that the jury could conclude beyond a reasonable doubt that the delivery of a controlled substance and the homicide were parts of one continuous transaction.

Consequently, we cannot say that the evidence was insufficient for the jury to find beyond a reasonable doubt, that the offense of the delivery of a controlled substance had occurred, that Wade had participated in such offense as a principal in the second degree, that a death occurred, and that the felony offense and the homicide were parts of one continuous transaction. Thus, we must affirm that the verdict in this case was supported by the evidence.

## V.

## TESTIMONY OF DECEDENT'S FATHER

Prior to trial, Wade filed a motion in limine to exclude the testimony of Roy Rankin, the decedent's father. In the motion, defense counsel argued that a check written by the decedent on the day he was shot was a self-authenticating document. Therefore, it was not necessary that Roy Rankin testify regarding the document. In addition, defense counsel offered to stipulate to certain other facts about which Roy Rankin was expected to testify,[13] and finally contended that "other stated reasons"[14] for Roy Rankin's testimony would serve only to arouse the sympathy of the jury and unfairly prejudice the defendant. Wade's motion was denied, and the State declined his offer to stipulate to certain facts.

Just prior to Roy Rankin's testimony, defense counsel asked the court to note Wade's objection to testimony regarding the decedent's family or children. Thereafter, Roy Rankin testified that he identified his son's body at the funeral home, that his son had been employed as a truck driver, and that his son had a twelve-year-old son. He also testified to the authenticity of a check written and cashed by his son on the day he was shot. He identified his son's wallet and stated that there was no money in it after the shooting. In addition, Roy Rankin testified that he owned the red truck his son was

---

**13.** The defense offered to stipulate to the existence of the decedent, York Rankin, and to the fact that he died on April 23, 1994, from a gunshot wound he received while he was in a red pickup truck on Wood Street in East Wheeling, West Virginia.

**14.** The "other stated reasons" were not identified in the motion.

driving at the time of the shooting. Roy Rankin explained that his son had permission to drive the truck. Finally, he identified the shirt his son was wearing when he was shot (which contained a bullet hole with blood around it).[15]

Wade argues that the court erred in allowing this testimony, which he contends was irrelevant, prejudicial, and intended only to arouse the sympathy of the jury. The State responds that the testimony of the decedent's father was relevant and not unduly prejudicial.

■ In reviewing the court's ruling on this issue, we are mindful that "[a]lthough most rulings of a trial court regarding the admission of evidence are reviewed under an abuse of discretion standard, . . . an appellate court reviews *de novo* the legal analysis underlying a trial court's decision." *State v. Guthrie*, 194 W.Va. 657, 680, 461 S.E.2d 163, 186 (1995) (citations omitted). *Accord* Syl. pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

To be admissible, evidence must first be relevant. W. Va. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W. Va. R. Evid.401. We have said that:

> Under Rule 401, evidence having *any* probative value whatsoever can satisfy the relevancy definition. Obviously, this is a liberal standard favoring a broad policy of admissibility. For example, the offered evidence does not have to make the existence of a fact to be proved more probable than not or provide a sufficient basis for sending the issue to the jury.

*McDougal* at 236, 455 S.E.2d at 795.

■ Applying this liberal standard, we find that most of the evidence Wade complains of was relevant, and the trial court did not abuse its discretion in admitting that evidence. However, even though the relevancy standard is a liberal one, we are dis-

turbed by the admission of Roy Rankin's testimony that the victim had a twelve-year-old son, a fact which bore absolutely no relation to the issues involved in this case. We have held that "[e]vidence that a homicide victim was survived by a spouse or children is generally considered inadmissible in a homicide prosecution where it is irrelevant to any issue in the case and is presented for the sole purpose of gaining sympathy from the jury." Syl. pt. 5, in part, *State v. Wheeler*, 187 W.Va. 379, 419 S.E.2d 447 (1992). We find that this evidence was not relevant to any fact of consequence to this case, and was admitted in error.

■ However, our analysis does not end with the determination that improper evidence was admitted.

> " 'A judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby.' Syllabus Point 7, *Starcher v. South Penn Oil Co.*, 81 W.Va. 587, 95 S.E. 28 (1918)." Syllabus Point 7, *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991).

Syl. pt. 3, *McDougal*. *Accord*, W. Va. R. Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). Moreover,

> [u]nder Rule 103(a), to warrant reversal, two elements must be shown: error and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the outcome of the trial. Stated conversely, error is prejudicial and ground for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it.

*Reed v. Wimmer*, 195 W.Va. 199, 209, 465 S.E.2d 199, 209 (1995). However, the determination of whether a particular error was prejudicial or harmless to a criminal case "is

---

**15.** Wade asserts that Roy Rankin became emotional during the testimony regarding his son's    shirt.

significantly more stringent than in civil cases." *State v. Marple,* 197 W.Va. 47, 53, 475 S.E.2d 47, 53 (1996). With regard to criminal cases, we have recognized:

> Harmless error analysis in the appeal of a criminal case asks "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered ... was surely unattributable to the error." *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182, 189 (1993).

*Marple* at 53, 475 S.E.2d at 53. In the context of testimony regarding the family of the victim in a criminal trial, we have previously noted that "when confronted with this issue, other courts strongly consider the weight of all the evidence presented at trial, as well as the manner in which the objectionable and perhaps improper references to the victim's family were made." *State v. Wheeler,* 187 W.Va. 379, 388, 419 S.E.2d 447, 456 (1992).

█ While the prosecutor in this case elicited improper testimony from Roy Rankin, he did not dwell on that testimony. Roy Rankin stated that the victim had a twelve-year-old son, but gave no further testimony in that regard. In light of the substantial eye witness testimony presented at trial, we believe that the jury would have reached the same verdict in the absence of Roy Rankin's testimony. Consequently, we find this error was harmless. However, we feel that we should once again caution prosecutors that, while " '[g]reat latitude is allowed counsel in argument of cases, ... counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury, nor permit or encourage witnesses to make remarks which would have a tendency to inflame, prejudice or mislead the jury.' " *Wheeler,* 187 W.Va. at 389, 419 S.E.2d at 457.

## VI.

### REFUSAL TO EXCUSE TWO JURORS FOR CAUSE

Wade contends that the court erred in refusing to excuse, for cause, two prospective jurors he challenged. One of the prospective jurors challenged, Mr. Frasnelli, indicated during collective voir dire that he would find the defendant guilty even if the prosecution failed to prove its case beyond a reasonable doubt. During his subsequent individual voir dire, the court explained the State's burden of proving its case beyond a reasonable doubt, and Mr. Frasnelli indicated that he understood and would follow the standard explained by the court. The defense then challenged Mr. Frasnelli for cause. The court denied the challenge based upon its conclusion that Mr. Frasnelli had indicated his understanding of the burden of proof and his willingness to follow the court's instructions.

The second challenged juror, Mr. Braner, stated during collective voir dire that he had heard about the case from his girlfriend, who worked at the Keg–Und–Kraut. Mr. Braner was questioned further regarding his knowledge of the case through individual voir dire. Mr. Braner explained that his girlfriend was not working on the evening of the shooting; however, a friend of Mr. Braner and his girlfriend initially found the decedent after the shooting, and apparently was present when he died. Mr. Braner explained that this was the extent of his knowledge of the case, and he had not followed it closely in the media. He was also questioned about his experiences in the neighborhood where the shooting occurred. He explained that his vehicle had been pelted with rocks in that neighborhood, and rocks had been thrown at him. When asked whether the individuals who threw the rocks were African–American, Mr. Braner answered affirmatively with regard to the incident where the rocks were thrown at his car, but indicated that he was not sure about the other incident where he, personally, had been targeted. Finally, Mr. Braner was asked whether he had a good relationship with African–Americans, to which he answered "[s]ome." In denying Wade's motion to strike Mr. Braner for cause, the court explained that Mr. Braner did not exhibit any real animosity toward the defendant or toward African–Americans in general. In addition, he observed that Mr. Braner's girlfriend continued to work at the

restaurant, and from that fact he concluded that any fear of the area was not an overriding concern of Mr. Braner.

Wade argues that the jurors should have been excused for cause.[16] He argues that Mr. Frasnelli should have been excused because of his initial indication that he might find the defendant guilty even if the State failed to meet its burden of proof. Wade further argues that Mr. Braner should have been excused for cause due to his racial bias, which was apparent from his comment that he had a good relationship with "some" African–Americans, and because of his connection to the case through his girlfriend's employment.

The State responds that both jurors were qualified to serve and there was no indication that either gentlemen was biased. The State contends that prospective juror Frasnelli was initially confused as to the distinction between a juror's role as trier of fact and the State's burden of proof. However, after his role as a juror was explained, Mr. Frasnelli expressed his understanding of the law and his willingness to follow the judge's instructions. The State contends that prospective juror Braner explained that he had not followed the case closely in the media and was not familiar with the surrounding circumstances. Consequently, Braner did not have an interest in the outcome of the case that would require that he be excused. In addition, the State asserts that the trial court evaluated Braner's demeanor and determined that he did not show animosity toward African–Americans or toward the defendant in particular.

It is well established that we review the trial court's decision on this issue under an abuse of discretion standard:

16. Although Wade used his peremptory challenges to remove both men from the jury, he may claim this error:

> The language of W. Va.Code, 62–3–3 (1949), grants a defendant the specific right to reserve his or her peremptory challenges until an unbiased jury panel is assembled. Consequently, if a defendant validly challenges a prospective juror for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his peremptory challenge to correct the trial court's error.

A trial court's ruling on a challenge for cause is reviewed under an abuse of discretion standard.... Because " 'determination[s] of impartiality, in which demeanor plays such an important part, ... [are] within the province of ... [a] trial judge,' " an appellate court should not disturb a trial court's decision to deny challenges for cause without a showing of abuse of discretion or manifest error.

*State v. Phillips,* 194 W.Va. 569, 588, 461 S.E.2d 75, 94 (1995) (citations omitted). *See also State v. Miller,* 197 W.Va. 588, 605, 476 S.E.2d 535, 552 (1996) ("The trial court has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice is demonstrated."); *Davis v. Wang,* 184 W.Va. 222, 225, 400 S.E.2d 230, 233 (1990) ("This Court has consistently recognized that the appearance and bearing of the juror in answering questions is of great importance and thus, the decision of the trial court as to his eligibility should control." (Citation omitted).). *Accord Wheeler v. Murphy,* 192 W.Va. 325, 331, 452 S.E.2d 416, 422 (1994). We find that the trial court did not abuse its discretion by ruling against the defendant with regard to these two challenged jurors.

▮▮▮▮▮ Pursuant to West Virginia statute, and our rules of criminal procedure, a defendant, or the State, is entitled to have a juror struck for good cause shown. *See* W. Va.Code § 62–3–4 (1923) (Repl.Vol.1992); W. Va. R.Crim. P. 24(b)(2)(A).[17] To establish good cause, it must be demonstrated that the prospective juror is somehow unqualified to serve on the jury. The qualifications of jurors are set forth in W. Va.Code § 56–6–12 (1923) (Repl.Vol.1997).[18] Additionally, we have established that:

Syl. pt. 8, *State v. Phillips,* 194 W.Va. 569, 461 S.E.2d 75 (1995).

17. This rule was amended after the conclusion of the trial in this case; however, the revisions were merely stylistic and made no substantive change to the rule.

18. The full text of W. Va.Code § 56–6–12 (1923) (Repl.Vol.1997) is as follows:

> Either party in any action or suit may, and the court shall on motion of such party, exam-

" 'The true test to be applied with regard to qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had.' *State v. Charlot*, 157 W.Va. 994, 1000, 206 S.E.2d 908, 912 (1974)." Syl. pt. 1, *State v. Harshbarger*, 170 W.Va. 401, 294 S.E.2d 254 (1982).

Syl. pt. 1, *Wheeler*, 192 W.Va. 325, 452 S.E.2d 416. *See also Phillips*, 194 W.Va. at 588, 461 S.E.2d at 94 ("The true test of whether a juror is qualified to serve on the panel is whether he or she can render a verdict solely on the evidence without bias or prejudice under the instructions of the court." (Citations omitted).). We have recognized that "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syl. pt. 5, *Miller*, 197 W.Va. 588, 476 S.E.2d 535. Moreover,

[t]he relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

Syl. pt. 4, *Id.*

In the case at bar, the two jurors answered questions during the collective voir dire that raised doubt about their possible bias or prejudice. The court conducted individual voir dire of each defendant and accorded counsel for the defendant and for the State the opportunity to question each juror. Thus, we find that the court followed the procedure we have set forth for determining a juror's qualifications:

[A]ll that is required by a circuit court when it determines that prospective jurors have been exposed to potentially prejudicial information is that the trial court "shall question or permit the questioning of the prospective jurors individually, out of the presence of the other prospective jurors, to ascertain whether the prospective jurors remain free of bias or prejudice."

*Wheeler*, 192 W.Va. at 331, 452 S.E.2d at 422 (quoting Syl. pt. 1, in part, *State v. Finley*, 177 W.Va. 554, 355 S.E.2d 47 (1987)). Accord Syl. pt. 2, *State v. Ashcraft*, 172 W.Va. 640, 309 S.E.2d 600 (1983) (" 'Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse.' ") (quoting Syl. pt. [3], *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978)). Having determined that the trial court followed the proper procedure, we now consider whether it abused its discretion in refusing to strike the two challenged prospective jurors.

■ With regard to Mr. Frasnelli, we observe that the initial questioning regarding the State's burden of proof appeared to confuse several of the prospective jurors. In fact, the court repeated the question to the entire jury pool four times, phrasing it differently to make it more clear. On one occasion, there was no response to the question from an apparently confused jury pool. Although there appeared to be some additional confusion on Mr. Frasnelli's part during his individual voir dire, the court, which had the opportunity to observe Mr. Frasnelli's demeanor, explicitly found that "he made it quite clear on reexamination that he understands the burden of proof, that he would

---

ine on oath any person who is called as a juror therein, to know *whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein;* and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause. And in every case, unless it be otherwise specially provided by law, the plaintiff and defendant may each challenge four jurors peremptorily.

(Emphasis added).

follow the instructions concerning the burden of proof and that as long as the test was what he in his own mind considered to be proven beyond a reasonable doubt, that he would acquit or find the defendant not guilty." We are mindful that "[t]his Court has concluded that 'the mere statement of a prospective juror that he or she is not biased with respect to a particular cause may not be sufficient for the trial court to conclude that no such bias exists.'" *Davis v. Wang,* 184 W.Va. 222, 225, 400 S.E.2d 230, 233 (1990) (citation omitted). However, based upon our review of the record, we cannot conclude that the trial court abused its discretion in refusing to strike Mr. Frasnelli from the jury for cause.

■ Turning now to prospective juror Braner, the record reveals that his knowledge of the case at bar was limited to knowing that a killing had occurred and that a friend had found the victim. He stated that he had not followed the case in the media. Mr. Braner expressed no apparent knowledge or pre-conceived ideas regarding who may have perpetrated the killing. There was no indication that he knew the victim or the defendant, or that he had any interest in the outcome of the case. Moreover, we do not believe that Mr. Braner's comment that he has a good relationship with "some" African Americans is indicative of a prejudice that would have prevented him from returning a verdict based on the evidence and the instructions provided by the court.

■ We have previously explained that "[w]hen a defendant seeks the disqualification of a juror, the defendant bears the burden of 'rebut[ting] the presumption of a prospective juror's impartiality[.]'" *State v. Phillips,* 194 W.Va. at 588, 461 S.E.2d at 94 (quoting *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751, 756 (1961)). Moreover, we have held:

The challenging party bears the burden of persuading the trial court that the juror is partial and subject to being excused for cause[ ]. An appellate court ... should interfere with a trial court's discretionary ruling on a juror's qualification to serve because of bias only when it is left with a clear and definite impression that a pro-

spective juror would be unable faithfully and impartially to apply the law.

Syl. pt. 6, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535. In this instance, the record does not provide a clear and definite impression that Mr. Braner would have been unable to faithfully and impartially apply the law. Consequently, we find no error in refusing to strike him.

## VII.

## CONCLUSION

For the reasons stated in this opinion, we affirm the January 16, 1996, order of the Circuit Court of Ohio County.

Affirmed.